## N. Y. SUPERIOR COURT.

### Gustavus A. Fudickar, plaintiff, agt. The Guardian Mutual Life Insurance Company, defendant.

When not limited by the terms of the submission, an *arbitrator* has authority to decide all questions of fact and of law arising upon the matters submitted, and his decision thereon is conclusive upon the same principle that a final judgment of a court of last resort is conclusive.

In an action to set aside an award, as a general rule, it is only in case of a fraud practiced by a party, or in case of corruption, partiality or misconduct on the part of the arbitrator within the legally established meaning of these terms, that a court of equity will interfere after an unrestricted submission.

The court will also interpose in case of excess or imperfect execution of the powers conferred, and in case of a gross mistake, about which there can be no dispute.

There are, however, some exceptions in which the court will grant relief, notwithstanding the submission was an unrestricted one, viz.:

1st. Where the arbitrator himself, either by the shape in which he makes his award, or by embodying in it a full statement of the grounds of his decision, or of his intention to be governed by strictly legal principles, has conferred upon the court a power of inquiry and revision which it would not otherwise have had. This must appear so clearly upon the face of the award as to justify the judicial mind in supposing that the arbitrator would have made a different award had he known that the judicial tribunals held a different view of the question of law arising in the case from that entertained by himself.

2d. Where the arbitrator has proceeded upon a gross and palpable mistake either of law or of fact affecting the merits. Here the error must be fundamentally and glaringly wrong.

*Special Term, February,* 1873.

This action was brought to set aside an award in favor of the defendants.

The plaintiff was an agent of the defendants, and after the expiration of about one year from the commencement of his

employment a contract under seal was entered into between the parties for the term of five years, dated April 1, 1869, by which plaintiff was appointed superintendent of the company's agencies in certain states, counties and cities therein named, with the right to appoint and remove agents in the districts specified, and to accept premiums, all cash or one-half loan, against the policies.

The contract provided that plaintiff should devote his time and attention in a faithful manner to developing and extending the business of the company, and to exercise such supervision over the agents of his appointment as should insure the faithful performance of their duties; that he should be responsible for the same, and that he should receive for his services and expenditures thirty-six and a half per cent of the amount received in cash and loans for the first year's premiums and ten per cent on all renewal cash and loans, which arrangement was to be continued to the plaintiff during his life, and in case his mother, Caroline Fudickar, should survive him, then the said renewal commissions should be continued to her during her life.

The contract also revoked all former agreements between the parties, except that the renewal commissions upon business obtained under them (ten per cent) should be continued in the same manner as provided for in the new contract, and finally it contained the following clause:

" The company, by the hand of their president and secretary, do acknowledge the aforesaid agreement to be binding on them for the term of five years from this date; but if this contract should cease to be in force, G. A. Fudickar's interest in the business of the agents appointed by him shall not be affected through the change, but he shall further be entitled to all the renewals of the business done previous to such change."

This contract was subsequently several times modified to adjust differences that had from time to time sprung up under it between the parties, but in particulars which it is not neces-

Fudickar agt. Guardian Mutual Life Insurance Co.

sary to detail here. Under it plaintiff built up a large business for the company.

On the 1st of April, 1870, the company discharged the plaintiff for alleged gross misconduct.

Out of this discharge numerous controversies arose. Plaintiff contended that he was entitled to large amounts for commissions; to the books of the German department, and to damages. Defendants claimed that a large balance was due them for overcharges, &c., &c.; that the books belonged to them, and that they were justified in discharging plaintiff.

All these matters were referred to George T. Hope, Esq., as sole arbitrator, who, after taking a large mass of testimony, found that plaintiff had been guilty of gross misconduct; that he had been rightfully discharged; that he was entitled to nothing, but was indebted to defendants in at least the sum of $2,000, for which amount the arbitrator gave judgment in defendants' favor.

The plaintiff thereupon commenced this action to set aside the award and to be restored to his former rights and remedies, upon the grounds:

I. That in holding that the plaintiff had been properly discharged, the arbitrator was guilty of a gross and palpable mistake of law.

II. That under the contract of April 1, 1869, the plaintiff, even after his dismissal, had a vested right, of which he could not be deprived, to commissions upon premiums thereafter paid to the company upon policies originally procured by plaintiff, and that in holding otherwise, the arbitrator was guilty of a gross and palpable mistake of law.

III. That the arbitrator on his own motion refused to receive evidence offered by plaintiff to show bias on the part of a certain witness produced by the company, on the alleged ground that the witness offered by plaintiff for that purpose had been present during the proceedings before the arbitrator, in violation of the rule agreed to by the parties at the commencement, that all witnesses should be excluded from the

room. That this refusal constituted gross misconduct and partiality.

IV. That the amount awarded against the plaintiff could not be accounted for by any possible state of the accounts, which were placed in evidence, and that in awarding said amount the arbitrator was guilty of a gross and palpable mistake of fact.

V. That the said arbitrator was guilty of gross misconduct and partiality in this: That after the evidence had been closed and the case had been submitted, he caused the defendants to make and deliver to him a summary statement of amounts to be charged to the plaintiff and with which plaintiff was to be credited. That the statement thus received was incorrect in the highest degree, but that it was examined and considered by the arbitrator before making his award, and that this was done without the knowledge or consent of the plaintiff.

VI. That in the course of the proceedings the arbitrator was guilty of gross misconduct and gross carelessness and partiality.

JOSEPH R. FLANDERS & A. J. REQUIER, *for plaintiff*, cited:

I. That a court of equity will set aside an award, *The Butcher of Croydon's Case*, 3 *Ch. R.*, 76; 2 *Vern.*, 251; 1 *Eq. Ab.*, 59; *Srettigue* agt. *Carpenter*, 3 *P. Wms.*, 362; *Walker* agt. *Frobisher*, 6 *Ves., Sen.*, 70; *Morgan* agt. *Mather*, 2 *Ves., Jun.*, 15; *Van Cortlandt* agt. *Underhill*, 17 *Johns.*, 405; *Barton* agt. *Knight*, 2 *Verm.*, 515; *Cameforth* agt. *Geer*, 2 *Vern.*, 705; *Redint* agt. *Pain*, 3 *Atk.*, 494; *Lord Lonsdale* agt. *Littledale*, 2 *Ves., Jun.*, 450; *Medcalfe* agt. *Ives*, 1 *Atk.*, 63; *Harvey* agt. *Shelton*, 7 *Beavan*, 455; *In the Matter of Hick*, 8 *Taunt.*, 694; *Ernery* agt. *Owens*, 7 *Gill* (*Md.*), 488; *Ligon* agt. *Ford*, 5 *Mumf.*, 10; *Herrick* agt. *Blair*, 1 *Johns. Ch. R.*, 101; *Perkins* agt. *Giles*, 53 *Barb.*,

342; *Roosevelt* agt. *Thurman*, 1 *Johns. Ch. R.*, 220; *Young* agt. *Walter*, 9 *Ves. Jr.*, 364; *Campbell* agt. *West*, 3 *Paige*, 138; *Richardson* agt. *Nornse*, 3 *Barn. & Ald.*; *Wohlenberg* agt. *Sageman*, 9 *Taunt.*, 251.

II. On the question of jurisdiction, 2 *Rev. St.*, 540; 3 *Rev. Stat.*, 5th ed., 855, § 22, and *Revisor's Notes*; *Burnside* agt. *Whitney*, 21 *N. Y.*, 148; *Bissell* agt. *Morgan*, 56 *Barb.*, 369.

III. That the company could not rescind the contract, *Lawrence* agt. *Dale*, 3 *Johns. Ch. R.*, 23; *McNevin* agt. *Livingston*, 17 *Johns. Ch. R.*, 436; *Lawler* agt. *Selden*, 11 *How. Pr. R.*, 526; *Monaghan* agt. *Story*, 2 *E. D. Smith*, 393; *Hunt* agt. *Singer*, 1 *Daly*, 209; 2 *Pars. on Cont.* (3d ed.), 192, 193; *Weaver* agt. *Sessions*, 6 *Taunt.*, 154; *Franklin* agt. *Miller*, 4 *Ad. & Ell.*, 599; *Hunt* agt. *Silk*, 5 *East*, 449; *Beed* agt. *Blandford*, 2 *Y. & J.*, 278; *Dubois* agt. *Hud. & Del. Canal Co.*, 4 *Wend.*, 285; *Tipton* agt. *Feitner*, 20 *N. Y.*, 431, *opinion of* SELDEN, J.; *Ulter* agt. *Stewart*, 30 *Barb.*, 23.

WHEELER H. PECKHAM, *for defendants, cited:*

I. As to the history of arbitration and the jurisdiction of courts over awards, 3 *Blackstone's Com.*, *p.* 16 *of marginal paging*, *Chitty's ed.*; *Stats.* 9 *and* 10 *Wm. III*, *ch.* 15; 2 *Story's Eq.*, § 1450, *and notes*; *Tappan* agt. *Heath*, 1 *Paige*, 293; *Burnside* agt. *Whitney*, 21 *N. Y.*, 148.

II. That the award should not be set aside, *Caldwell on Arbitration*, *pp.* 373, 374, 384; *Knox* agt. *Symonds*, 1 *Ves.*, *Jr.*, 369; *Morgan.* agt. *Mather*, 2 *id.*, 21; *Goodman* agt. *Sayres*, 2 *Jacob & Walker*, 249; *Van Cortlandt* agt. *Underhill*, 17 *Johns. R.*, 408, 411, 415, 420, 431; *Jackson* agt. *Ambler*, 14 *J.*, 105; *Campbell* agt. *Western*, 3 *Paige*; *Story's ed.*, *vol.* 2, §§ 1451, 1454, 1455.

LIVINGSTON K. MILLER, *for defendants, cited:*

I. That plaintiff was properly discharged, *Huntington* agt.

*Claflin*, 10 *Bosw.*, 262; *Lantry* agt. *Parks*, 8 *Cow.*, 63; *Marsh* agt. *Rulesson*, 1 *Wend.*, 514; *Sickels* agt. *Pattison*, 14 *id.*, 257; *Bonesteel* agt. *The Mayor, etc.*, 22 *N. Y.*, 162; *Niblo* agt. *Binsse*, 44 Barb., 54; *Smith* agt. *Brady*, 17 *N. Y.*, 173; *Tompkins* agt. *Dudley*, 25 *id.*, 272; *Husted* agt. *Craig*, 36 *id.*, 221; *Walker* agt. *Millard*, 29 *id.*, 375; *Ellen* agt. *Topp*, 6 *Exchequer*, 424.

II. That none of the errors alleged is sufficient to vitiate the award, *Emmet* agt. *Hoyt*, 17 *Wend.*, 410; *Smith* agt. *Cutler*, 10 *id.*, 589; *Viele* agt. *Troy and Boston R. R. Co.*, 20 *Barb.*, *pp.* 382, 395 *to* 396; *Dater* agt. *Wellington*, 1 *Hill*, 319; *Butler* agt. *The Mayor, etc.*, 1 *Hill*, 489; *Perkins* agt. *Giles*, 53 *Barb.*, 342; *Morewood* agt. *Jewett*, 2 *Robert.*, 496; *Ott* agt. *Schroeppel*, 1 *Seld.*, 482; *Trumbull* agt. *Martin*, 37 *How. Pr. R.*, 20; *Burchell* agt. *Marsh*, 17 *How. U. S. R.*, 344.

FREEDMAN, *J.*—If this were an appeal from a judgment entered upon the report of a referee, instead of being a bill in equity to set aside the award, I should, without much hesitation, vote for reversal and a new trial. But the doctrine of error has no application in an action to set aside an award.

When not limited by the terms of the submission (and in this case there is no such limitation) the arbitrator has authority to decide all questions of fact and of law arising upon the matters submitted. He is the judge of the parties' own choosing; and his decision of the questions of fact and of law, within the scope of his authority, is conclusive upon the same principle that a final judgment of a court of last resort is conclusive.

As a general rule, it is only in case of a fraud practiced by a party, or in case of corruption, partiality or misconduct on the part of the arbitrator within the legally established meaning of these terms, that a court of equity will interfere, after an unrestricted submission. The court will also interpose in

case of excess or imperfect execution of the powers conferred, and in case of a gross mistake, about which there can be no dispute. Plaintiff did not bring himself within any of these cases.

There are, however, some exceptions in which the court will grant relief, notwithstanding the submission was an unrestricted one, viz.:

*First.* Where, as pointed out by Mr. Morse in his recent valuable work on "Arbitration and Awards," the arbitrator himself, either by the shape in which he makes his award, or by embodying in it a full statement of the grounds of his decision or of his intention to be governed by strictly legal principles, has conferred upon the court a power of inquiry and revision which it would not otherwise have had. This must appear so clearly upon the face of the award as to justify the judicial mind in supposing that the arbitrator would have made a different award had he known that the judicial tribunals held a different view of the questions of law arising in the case from that entertained by himself.

*Secondly.* When the arbitrator has proceeded upon a gross and palpable mistake, either of law or of fact, directly affecting the merits. Here the error must be fundamentally and glaringly wrong.

The case at bar does not fall within the first exception; for the award shows no intention to be guided solely by legal principles, and expressly states that it does not contain *all* the reasons which influenced the decision of the arbitrator. The second exception I at first supposed did cover the case. It seemed to me that the conventional relation, created by contract under seal between a corporation and its superintendent, could not be held to be the same in all respects as the common-law relation of master and servant. It also appeared to me that the contract in this case, which was entered into after careful consideration by both parties, which contained minute and intricate provisions as to the rights and obligations of the parties, and which was several times

amended and modified to adjust differences that had from time to time sprung up between the parties, could not be rescinded by the company by reason of its inability to restore the plaintiff to his original position. For these reasons I felt strongly inclined to hold that the plaintiff was improperly discharged, and that the decision of the arbitrator to the contrary, in view of the magnitude of the interests involved, and in view of the arbitrator's further ruling, flowing from this first named erroneous decision, that in consequence of such dismissal plaintiff was no longer entitled to the renewal commissions guaranteed to him by the contract, amounted to a gross and palpable mistake of law, entitling the plaintiff to a vacation of the award. But, after an exhaustive examination of the authorities cited by both parties, I felt constrained to come to the conclusion that the evidence before me is not sufficient to warrant my interference. Although the American as well as the English decisions upon this point, which are by far too numerous to be specially adverted to here, are very conflicting, yet the clear weight of authority is that the mistake must be so fundamentally, palpably and glaringly wrong as to amount, in the light of the facts of the case, almost to evidence of misconduct. It is not enough that the point is doubtful.

As the whole evidence taken by the arbitrator has not been placed before me, and as the award does not contain all the facts and reasons which influenced the decision, but merely gives a selection of some by way of illustration, it is impossible for me to say that, in the face of the final, *general* findings, that the contract was broken by plaintiff repeatedly and constantly ; that his acts were not only wrong but unjustifiable; that such acts have entailed upon the company great loss, which will be known and felt during future years ; and that, for these reasons, it became the duty of the company to dismiss him ; the rulings of the arbitrator upon the questions of law herein before referred to, but arising in connection

Fudickar agt. Guardian Mutual Life Insurance Co.

with this state of facts, were so indisputably and unmistakably wrong as to vitiate the award.

As to alleged mistakes of figures, it was incumbent upon the plaintiff to show not only that the arbitrator had erred, but, also, that the plaintiff subsequently convinced the arbitrator as to the existence of such mistakes. This the plaintiff failed to show.

The fact that the arbitrator, after the close of the evidence, received and accepted from the company a statement of its claims, extracted from the company's books, was an irregularity, notwithstanding the arbitrator's explanation of it. According to his own version the parties had consented that he should make an examination in person of the company's books. That did not authorize him to accept the company's extract from the books in place of such examination. But the plaintiff saw the statement in the hands of the arbitrator, talked with the latter about it, and finally concluded to take his chances for an award under it. If he was dissatisfied, he should have revoked the submission.

The defendant is entitled to judgment, dismissing the complaint with costs. No extra allowance will be granted. The findings, to be prepared in accordance with the opinion, are to be handed up for settlement on a notice of at least five days.