Lewis, J.
The petitioner, being desirous of acquiring for railroad purposes a lot of land owned by Mrs. Bennett, in the city of Buffalo, lYl-J- feet front on Buffalo river and about 120 feet in depth to Joy street, upon which was an elevator, entered into a written agreement with Mrs. Bennett, by the terms of which she agreed, upon the payment of the full purchase-price, to convey to petitioner, with covenants of seizin and quiet enjoyment, a perfect title to said premises, with exceptions not material to be here mentioned. It also provided for a conveyance by Mrs. Bennett of other rights and interests in contiguous property.
With a view of ascertaining the value of said premises and the compensation which, should be paid therefor, the petitioner agreed to institute proceedings under the general railroad laws for the condemnation of lands for railroad purposes ; and it further provided as follows: “ It is agreed that in said proceedings Melson K. Hopkins, Robert Dunbar and *227 Brigham Clark shall he appointed commissioners to ascertain and determine the compensation which ought justly to be made by the company to the party or parties owning or interested in said property, and the decision of a majority of them shall be binding upon both parties as the decision of all. It being understood and agreed, however, by both parties to this instrument that said commissioners shall be governed in estimating the said valuation and compensation by the rules of law applicable to proceedings under said statutes (except as they may be modified by this agreement), and that all the rights of appeal given by law shall be reserved to either party.”
The petitioner agreed to pay to Mrs. Bennett on execution of the agreement $2,250; $20,000 within ten days thereafter and the balance of the sum awarded within thirty days after the final determination, and to make some railroad connections with another elevator belonging to Mrs. Bennett.
The petitioner obtained an order at special term appointing said persons commissioners. They entered upon the discharge of their duties. After viewing the premises and hearing the proofs they made a report awarding as compensation to be paid for the property $469,375. The petitioner not being satisfied with the amount awarded refused to move for a confirmation of the report. The owner thereupon applied to the special term of this court for and obtained an order confirming the report and appraisal. Petitioner brought an appeal and the appraisal and report were set aside by the general term on the ground of the admission by the commissioners of improper evidence. The hearing again came on before .the commissioners; claimant offered, and the commissioners, notwithstanding the objection of the petitioner, received the same objectionable evidence, the receipt of which upon the first hearing was the cause of the reversal of their report. Two of the commissioners, Messrs. Dunbar and Clark, while the commissioners were in session upon the Second hearing, publicly stated that they did not consider themselves bound by the supreme court decisions, but they *228 considered themselves bound and sworn to ascertain and determine the compensation which ought justly to be made by the company to the party or parties owning or interested in the property, and to do justice between the parties, and as much justice to the railroad company as to Mr. Bennett, as far as they knew.” The hearing has proceeded so far that the owner has introduced her evidence. The petitioner has not introduced its evidence and now moves to vacate the order appointing the commissioners. The questions for consideration are:
First. Have Messrs. Dunbar and Clark been guilty of misconduct such as is cause for their removal ?
Second. Has the court on this motion the power to remove them ?
Third. H it has, is this a proper case to exercise such power, in view of the contract existing between the parties %
In disposing of these questions I shall confine myself to the conduct of the commissioners in receiving the evidence held by the general term to be illegal and incompetent, and their avowal that they do not consider themselves bound by the decision of the general term. Taking this statement in connection with their acts in receiving the evidence, it amounts to a declaration on their part that they understand the full import of the decision of the general term, and have made up their minds not to conform their conduct on the trial to it; they have intentionally and deliberately admitted evidence that the superior tribunal held to be incompetent and illegal. Is it their duty to follow the decision of the general term % It is the universal practice of the judge at special term and circuit, where the general term has decided the case, to follow the law as laid down by that court. Should he fail so to do it would lead to confusion, and the ease could not be brought to a conclusion, as it would continue to vibrate between the two courts. It is clearly the duty of the justice at special term or circuit, when the general term has made a decision of the case, to accept its decision as the true exposition of the *229 law of that case, and follow it, whatever may be his individual opinion as to its correctness; and should he persistently refuse so to do, he would be guilty of misconduct in office. He may be able to find conflicting decisions upon the question, but it is sufficient for him that the law has been laid down by the appellate court (Adams agt. Bush, 2 Abb. [N. S.], 112; Greenbaum agt. Stein, 2 Daly, 223; Rochester and G. V. R. Co., agt. Clarke Nat. Bank, 60 Barb., 234; Jones agt. N. Y. and Erie R. Co., 29 Barb., 633, 636; Mead agt. Smith, 44 How., 476; Cooper agt. Smith, 43 Supr. Ct., 9).
If the law laid down by the general term and followed by the judge at special term and circuit is not sound, the remedy of the aggrieved party is either an appeal to the court of appeals or a motion for reargument.
Does this same rule apply to' these commissioners? While they are the persons agreed upon as commissioners, by the parties, they were appointed by the court; the contract provides that they shall be governed, in estimating the valuation and compensation (and that is substantially all the duty they have to perform) by the rules of law applicable to proceedings under the statutes, referring to the laws for the condemnation of lands for railroad purposes, “ except as they may be modified by the agreement.” The general term has held that notwithstanding the clause in the contract last mentioned, the commissioners erred in admitting evidence.
The agreement provides that “ all the rights of appeal given by law shall be preserved to the parties.” One of the rights of appeal in such proceedings is to seek a reversal of the report on account of the admission of improper evidence. If the commissioners can upon a retrial admit the same illegal evidence, the provision giving the right of an appeal to the parties, instead of being a right reserved, becomes an injury to the party aggrieved, for an appeal adds to his expense and avails him nothing. This right of appeal must have been inserted in the contract for some effectual purpose, and one object was that the errors of the commissioners might be cor- *230 reeled. The court has put its construction upon the contract, decided that the commissioners had taken an erroneous view of its meaning, and had erred in the admission of evidence; that decision becomes, by virtue of the agreement itself, a part thereof and is binding upon the parties. When parties enter into a contract they practically agree that they will, in carrying out its provisions, conform to the decision of the courts. In case controversies arise, they are at liberty to invoke the judgment of the highest tribunal the law has .provided for the decision of their disputes; but when that tribunal has spoken, they must obey. The highest tribunal the law has provided to decide questions involved in this preceding, touching the admission of evidence, has interpeted the contract and decided upon the course the inferior tribunal shall pursue in the discharge of its duties. Having so spoken, they must observe the decision as a part of the contract. Had the agreement provided that no appeal should he taken from the award of the commissioners, they would not be bound by the strict rules of evidence, but could decide according to their sense of equity (62 N. Y., 392).
In such a submission the parties submit their controversies, saying to the arbitrators, “you shall not be amenable to a higher tribunal; we submit all our differences to you; do what you think is just in the premises ; we will not appeal.” But this agreement provides very differently, it says that each party may have the advantage of an adjudication of the appellate court. While this is conceded by claimants’ counsel, they insist that as there is no appeal from the second award, the commissioners are not now amenable to any appellate tribunal, and therefore can do as they please as to following the decision of the general term. I am not satisfied that this position is correct, and cannot bring my mind to the conclusion that such is the import and meaning of the contract.
Is the refusal of the commissioners to follow the general term, misconduct, or mere error of judgment ? The general term say in their opinion, referring to the class of evidence *231 admitted by the commissioners upon the first hearing, “ the reference made to the earnings of other elevators with a view of proving the income of the property in question after its capacity is increased by the expenditure of the necessary amount for that purpose, is not a reliable or approved basis for estimate of value, but it becomes a matter of speculation depending upon too many circumstances to be entitled to consideration as evidence of value ; and the same may be said of the contemplated relation to and operation of other property, and projects in view for connecting facilities for channels of transportation not in the control of the owner of the property in question. * * * And when an attempt is made to found an estimate of value based upon income upon those conditions, too many contingencies intervene to make such opinions evidence, or to furnish any legitimate aid to the tribunal required to determine the value of property. It cannot be seen that this character of testimony did not have its influence on the commissioners, if it did not control their action in reaching a result. * * * In view of all the testimony it is difficult to escape the conclusion that the commission reached their result by the application of erroneous principles to the appraisal of value of the property in question, and that the amount of compensation awarded by their report was by that means increased considerably in excess of the fair market value of the property.” The court held, that the admission of such evidence was error and set aside the award for that reason; and yet upon the second hearing the commissioners ignore this decision, expose their minds to the influence of this illegal evidence, and avow that it is done intentionally, and that they are not bound to follow the general term decisions. If this is simply an error of judgment, it is an error so palpable and material as to amount in law to misconduct. It is saying, in unmistakable language, “ we will not investigate questions submitted to us in conformity to legal proceedings. We will not, in administering the law, conform to the law.” If this, be simply error of judgment, the *232 probable consequences are so serious and disastrous that they should be averted if possible.
Has the court power on this motion to vacate the order made appointing these commissioners and thereby in effect remove them ? While these commissioners are not arbitrators, the decisions of the courts in matters of arbitration may aid us in determinining the questions involved in this motion:
Where an arbitrator has proceeded upon a gross and palpable mistake of law affecting the merits the court will grant relief (45 How. Pr., 462). “If an arbitrator unreasonably refuses to hear a competent witness it is gross misconduct, for such refusal is against natural justice. If the whole cause be referred back to him by the court, his refusal to admit additional evidence is fatal. If an arbitrator, contrary to express directions, receives affidavits instead of oral testimony, it is misconduct which will invalidate his decision ” (Morse on Arbitration and Award, 536, and cases there referred to). If arbitrators are guilty of misconduct in refusing to receive proper evidence or other misbehavior affecting the rights of a party, the court may set aside their award upon motion (Smith agt. Cutler, 10 Wend., 589; Walker agt. Frobister, 6 Vesey, 70 ; Matter of Application of Mayor of New York, 49 N. Y., 150; Matter of Prospect Park and C. 1. R. R. Co., 85 N Y., 489). If the court can set aside an award on motion, why not remove an arbitrator for good cause before he makes his award ? The opinion of the general term in this case says: “ The court in the first instance might have refused to appoint these persons as commissioners, and may yet revoke the order of their appointment.” Judge Earl, in the opinion in the court of appeals in this case, says: It is undoubtedly true that the court at special term was not bound to appoint the three commissioners named by the parties. It could have refused to appoint them and have left the parties either to abandon their agreement or to carry it out in some other way.” If the court at special term could refuse to appoint the persons commissioners named in the contract, *233 why, after having so made the order, may it not set it aside ? If Messrs. Dunbar and Clark had appeared in court when the motion was made for their appointment and announced that if appointed they would follow their own notions as to the admission of evidence and would not be guided by the decision of the court in the case, I assume the court would have refused to make the order it did. Having now learned that the commissioners so appointed do assume that position, is it not in the power of the court to cancel its order 1
In the Matter of the Application of the Prospect Park and Coney Island Railroad Company to acquire title to land (85 N. Y., 496) the court says: “If the landowners in such case claimed that there was any irregularity, fraud or mistake in the proceedings of the commissioners, or back of such proceedings, their remedy is by motion to set the award and proceedings aside, and not by appeal from the award or the order confirming the same.”
Judge Bolgek says, In the Matter of the Application of The New York Central and Hudson River Railroad Company for the appointment of commissioners to appraise lands of Alexander Cunningham and others (64 N. Y., 64): “ The court had the power to revoke the appointment of the first commissioners for good cause shown; and it also had the power to set aside the confirmation of their report, for good cause shown, and to reject it.”
Does the contract stand in the way of granting this order ? It is contended by the landowner that changes have occurred in the property and its surroundings since the making of this contract, and that losses will follow to her if the order appointing the commissioners be vacated. It is not claimed that the possession of the owner in the property has been disturbed. The contract very carefully provides that no right or interest of Mrs. Bennett shall in any manner be interfered with or distributed until the entire purchase-price is paid. The prosecution of the suits therein mentioned is not interfered with. The owner is at liberty, so far as the contract provides, *234 to prosecute her actions with diligence. If she has parted with anything or been less diligent, it- is not because she was bound so to do by the contract. If the refusal of the commissioners to follow a general term decision be misconduct, and the cause for vacating the order appointing them, and vacating the order destroys the contract and deprives the landowner of the benefit of its provisions, she is a party to the causes producing that result. The admission of the illegal evidence was deliberately urged by her counsel upon the commissioners. The same consequences to the contract would result should one of the commissioners die or in any way become disabled so as not to be able to proceed in the matter.
It is contended that this motion is premature; that it is not yet known that any one is to be injured by the award of the commissioners. It is, however, now known that two of the commissioners refuse to conduct the proceeding in a lawful manner. The petitioner is now aware of this ; can it wait until the award is made and then complain ? Will it not then be said : “You are too late with your complaints. You
were informed during the trial upon what rules and principles a majority of the commissioners were proceeding, and you were not at liberty to remain silent; take your chances of obtaining a favorable award, and then complain. ■ You should have refused at once any longer to be a party to the proceedings, knowing that errors could not be corrected by an appeal.” If a party is made aware, during the trial, of misconduct of a juror, and fail to complain until after verdict, it is then too late.
In Faviell agt. Railway Company (2 Exch. R., 344), baron Aldersoít, said: “ Where the defendant saw the arbitrator entertaining a question which he ought not to entertain, it was his duty to interpose and apply to the judge for the purpose of being allowed to revoke the submission which no doubt would have been granted had it appeared by affidavit that the arbitrator intended to exceed his jurisdiction. Instead of doing that, the defendants, although they find the arbitrator *235 going on, do not interpose but make the question one for his determination, and he has determined it” (See Morse on Arbitration and Award, 104, 105; Fox agt. Hazeltine, 10 Pick., 275; Brown agt. Leavitt, 26 Maine, 251; Hiltown Road, 18 Penn. St., 233 ; Christman agt. Moran, 9 id., 487). The ease of Malmesbury Railroad Company agt. Budd (2 Ch. Div., 113), was a motion in an equity action to have it declared that an arbitrator had become and was disqualified from and incapable of being or acting as arbitrator under an indenture, and for an injunction restraining him from acting. Sir George Jessel, master of the rolls, in his decision said: “ No doub't there is jurisdiction in the court to set aside an award on the ground of the corruption of the arbitrator, but if the corruption is proved beforehand so that the arbitrator is unfit to sit, it appears to me that by analogy to the writ of prohibition which goes to inferior courts to prevent a judge, who is incompetent, from deciding a case, there must be a similar jurisdiction to prevent the throwing away of the expense and trouble, to say nothing of the delay involved in going on with an arbitration before an arbitrator, who has no power of deciding the case.”
In Beddow agt. Beddow (9 Ch. Div., 89), the same judge granted an injunction to restrain an arbitrator who had become unfit by reason of personal misconduct from hearing the case.
These cases are authority for the removal of arbitrators before they make an award. It is true the orders were granted in equity actions brought for that purpose. While I have not found a precedent for the granting of just such a motion as this, there are many precedents, as we have seen, for setting aside awards on motion. This is a proceeding in this court. The order sought to be vacated was made by this court, and, as was stated by justice Glerke in the case of Lowber agt. The Mayor, &c., of New York (5 Abb. Pr., 487), “ it belongs to the essential inherent powers of this court to exercise such an efficient control over every proceeding in an action pending in it as effectually to protect every person *236 actually interested in the result from injustice and fraud, and that it will not allow itself to be made the instrument of wrong no less on account of its detestation of everything conducing to wrong, than on account of that regard which it is proper it should entertain for its own character and dignity.” Not finding an exact precedent for this motion, my mind came to the conclusion that this order should be granted with reluctance and some misgivings as to its correctness. I am relieved, however, by the consciousness that if my conclusion is erroneous, an easy and speedy remedy is provided to correct my error. I have, in deciding this motion, assumed that the general term laid down the law correctly in this case, and believing it to be the duty of the commissioners to conform their conduct in the ad mission of evidence to the principles therein contained, and they having refused so to do, and this court having granted the order appointing them to the responsible position they hold, it is my duty to set aside the order and leave the parties -to agree upon new commissioners or pursue such other course as they may be advised. I put this decision solely upon the ground above stated. Charges are made in the moving papers against one of the commissioners, touching some business transactions between himself, as a member of a firm, and Mrs. Bennett. These transactions all occurred after making of the award and at a time when it was not known that he would be required again to act in the proceedings, but without regard to the time of their occurrence. The affidavits read in opposition to the motion, fully and satisfactorily explain these transactions and remove any suspicion of impropriety on the part of the commissioner.
The order granted by this court on the 25th day of October, 1883, appointing N. K. Hopkins, Brigham Clark and Robert Dunbar commissioners in this proceeding, should be vacated and set aside, and the commissioners removed.