PENNSYLVANIA R. CO. v. CENTRAL R. CO. OF NEW JERSEY.

(District Court, S. D. New York. June 24, 1892.)

1. NAVIGABLE WATERS—OBSTRUCTION BY RAILROAD DRAWBRIDGE—SIGNALS.
 Proprietors of drawbridges over navigable streams are bound to use reasonable means to avoid accidents, and not to obstruct navigation, including the use of available signals to avoid misunderstanding and collision, though not expressly required by statute.

2. SAME—PREFERENCE TO RAILROAD TRAINS.
 A tug with a tow on a hawser in going up the channel of Newark Bay, on approaching the defendant's drawbridge, and when at a reasonable distance therefrom, gave the usual signal of three whistles, showing her wish to go through the draw. No answer was received, and the whistles were repeated several times. When within 1,500 or 2,000 feet, or nearer, a railroad freight train was seen approaching the draw, some two miles distant, and the draw was not opened. No answering signals were given; and none were customarily given on that bridge. After the railroad train had passed, the drawbridge was seen opening,—and a green light set on the draw, showing that fact. The tug had maneuvered for delay as well as she could in the mean time, and when the draw was opened proceeded through it, using all reasonable skill; but through the delay in answering her signals and the cross set of the tide, the tow came in contact with the pier on one side of the draw, and was injured. *Held,* that the defendant was answerable for negligence in giving no answering signals, and for an unreasonable preference given to the railroad train, thereby unreasonably obstructing and embarrassing the navigation of the tug and tow.

In Admiralty. Libel by the Pennsylvania Railroad Company against the Central Railroad Company of New Jersey to recover damages for collision of a scow with a bridge abutment. Decree for libelant.

Robinson, Bright, Biddle & Ward, for libelant.
De Forest & Weeks, for respondent.

BROWN, District Judge. On the 15th of November, 1891, at about 5:30 A. M., the scow Senate, with a cargo of about 160 tons of brick, while proceeding up Newark bay in tow on a hawser from

the steam tug Winnie, bound for Newark, in going through the westerly passage of the draw of the Central Railroad bridge, came in contact with the chamfered end of the central abutment. The bow of the scow was square on deck, but sloping beneath. In the contact with the pier, a plank from its side was thrust through the bow of the boat below the water line about a foot inside of the sloping corner beam, which caused a leak, from which she sank soon after passing through the draw. The above libel was filed to recover the damages.

The libelants claim that this collision was not through any negligence of the tug, but through the negligence of the defendants in not opening the draw when signaled by the tug, and in compelling her to wait for a freight train, without giving her any answering signal to show their intention, thereby so embarrassing her in the handling of her tow, that, through the cross set of the tide, collision resulted, without any fault on the part of the libelants.

The evidence leaves no doubt that as respects the management of the tug, the signals given, and the trains passing, the account of the libelants is more accurate than that of the respondents. The defendants' evidence with regard to the passing of the trains, well illustrates how little reliance can be placed on the general recollection of persons in regard to ordinary occurrences under their immediate observation when their memory is not charged with the matter at the time. Several of the witnesses from the bridge testified most positively that no train went past within a couple of hours before the tug and tow went through, and that there was no detention or delay; whereas, it subsequently appeared, by incontrovertible evidence, that at least three trains had passed within an hour, and one of them at about the same time the tug captain stated.

The undoubted facts, therefore, are, that the tug, pursuing the usual course to go through the westerly passage of the draw, gave the usual signal of three whistles when about half a mile distant. No answering signal being received, and no evidence appearing that the draw was opening, the tug, after running 400 or 500 feet, gave a second signal, and after that saw a freight train coming from Singer's factory to the westward about two miles off. The tug then stopped and drifted till the train had passed, when a third signal of three whistles was given, and afterwards three more, after which the draw was seen to be turning open; whereupon the tug started up full speed in order to get her tow properly into shape for going into the passage; but in consequence of the waiting and drifting meantime, and of the set of the tide, the starboard corner of the scow struck with a heavy blow the sloping corner of the pier, some two or three feet from the angle, with the result above stated.

It was not the practice in the management of that draw to give any answering signals to vessels desiring to go through. In the daytime, vessels in passing are required to wait until they see the draw beginning to open; in the nighttime, a red light is exhibited when the draw is closed, and a green light when it is off: and vessels do not know that the draw is opening until the green light is seen.

.The proprietors of a drawbridge over navigable waters of the United States, are bound to use it in such a manner as not unnecessarily to obstruct navigation, (Blanchard v. Telegraph Co., 60 N. Y. 510; The City of Richmond, 43 Fed. 85, 88;) and this duty includes the use of all reasonable methods tending to avoid accident or collision. This principle is not disputed by the counsel for the respondents. Their defense and much of their evidence were to the effect that all reasonable facilities were in fact given to this tug; that the draw was open when the vessel was more than half a mile below; that there was no delay, no train, and no stopping of the tug. This defense, on the facts, I am obliged to discredit, as above stated; being satisfied that the libelants' account of the matter is correct.

With a freight train two miles distant, and a tug with a tow on a hawser coming up with the tide not over 1,500 or 2,000 feet away, the refusal to open the draw in order to give a preference to so distant a train, was an unreasonable and unjustifiable obstruction of the tug and tow. Its unreasonableness was increased by the omission to give any signal, which left the tug in uncertainty what to do, or what to expect. The practice of the bridge to give no answering signals, is one little to be commended, and is liable often to place the bridge in the wrong. The draw is worked by steam; and answering signals, such as are given upon other bridges, could be given without difficulty. True, signals are not made a statutory duty. But the practical necessity of such signals is manifest, particularly where there is a cross set of the tide; because without them it is impossible for the approaching vessel to know with any certainty whether she can safely continue on towards the draw, or whether she must stop and maneuver for delay. The embarrassment to a tug incumbered with a tow upon a hawser is still greater; and this is so evident, that I have no hesitation in holding that the omission either to open the draw when the tug is at a reasonable distance, or to give prompt notice by some practicable answering signal if the draw cannot then be opened, is negligence and misconduct; because it violates the rule that is obligatory upon all persons charged with duties concerning navigation, to use all reasonable and practicable means of avoiding collision and the attendant losses of life and property. Edgerton v. Mayor, 27 Fed. 230. The defendants neglected this duty in the present case; that was the efficient cause of the accident, and I do not find any lack of reasonable skill and diligence on the part of the tug.

Decree for the libelants, with costs, with an order of reference to compute the damages, if not agreed upon.