# THE CHESAPEAKE LIGHTERAGE AND TOWING COMPANY *vs.* THE WESTERN ASSURANCE COMPANY OF TORONTO, CANADA.

### *Estoppel by Judgment in Suit Between Other Parties.*

The North German Lloyd having agreed to transport a certain quantity of corn from Baltimore to Europe sent a scow or lighter belonging to the Chesapeake Company to bring the corn from an elevator across the harbor to the Lloyd ship. The scow was upset when near the vessel and the cargo of corn lost. The owner of the cargo was paid the amount of his loss by a company in which he had insured it and this company then, as assignee of his rights, filed a libel in Admiralty in the United States Court against the North German Lloyd. That Court held the Lloyd Company to be liable upon the ground that the scow or lighter was a substitute for the vessel, delivery to the scow being delivery to the vessel; that the scow was not seaworthy when the risk began, and hence the loss was not from a excepted peril of the sea. The Chesapeake Company, the owner of the scow, had the cargo insured in the defendant insurance company. After the libel was filed the Chesapeake Company notified the defendant company that the North German Lloyd would look to it, the Chesapeake Company, as owner of the scow, for indemnity, and that the Chesapeake Company would be entitled to a renumeration from the defendant company as insurer, which was therefore requested to defend said suit. The defendant company took no part in the trial of the Admiralty libel. The Chesapeake Company, having paid the loss to the North German Lloyd, sued the defendant on its policy of insurance. The defendant alleged that the unseaworthiness of the scow at the time of the beginning of the risk was a defense to the action, and also that the finding of the fact of such unseaworthiness in the Admiralty suit was conclusive upon the plaintiff in this action. *Held*, that the defendant company is not estopped by the Admiralty decree, because it was not a party or privy to that suit, and it could not have properly intervened therein; and since the defendant is not bound by that decree, and estoppels must be mutual, it cannot rely upon the decree as an estoppel to prevent the plaintiff company from alleging in this action that the scow insured by the defendant was seaworthy.

Appeal from the Court of Common Pleas (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Robert H. Smith* (with whom were *Jacob France* and *J. Craig McLanahan* on the brief), for the appellant.

Neither of the parties to this action was a party to the Admiralty suit.   (*a*) Judgments bind parties and priviès, but not strangers.   *Greenleaf on Evidence*, sec. 523; *Bigelow on Estoppel* 5 ed., p. 113; *Herman's Law of Estoppel*, sec. 43; *Alexander* v. *Walter*, 8 Gill, 183, note; *Cecil* v. *Cecil*, 19 Md. 72; *Cheveront* v. *Textor*, 53 Md. 375.

The appellee was neither a party nor a privy to the Admiralty suit.   It had no connection whatever with either party to that suit, nor did it bear any relation to either of said parties which could make it a privy:   "The general doctrine being this, that the person who represents another, and the person who is represented, have a legal identity, so that whatever binds the one, in relation to the subject of their common interest, binds the other also."   *Greenleaf on Evidence*, 16 ed., vol. 1, sec. 536.   "In the law of estoppel one person becomes privy of another, (1) by succeeding to the position of that other as regards subject of the estoppel; (2) by holding in subordination to that other."   *   *   *   "But it should be noticed that the ground of privity is property and not personal relation."   *Bigelow on Estoppel*, 5 ed., p. 142.   "But to give full effect to the principle by which parties are held bound by a judgment, all persons who are represented by the parties, and claim under them, or in privity with them, are equally concluded by the same proceedings."   *Cecil* v. *Cecil*, 19 Md. 72, 79.

(*b*) The appellee, being neither a party nor a privy to the suit in the Admiralty Court, is not bound by the finding of fact or the decree in that case, and is not entitled to plead them in defense of this suit.   Estoppels are always mutual and reciprocal.   *Cheveront* v. *Textor*, 53 Md. 308; *Groshons* v. *Thomas*, 20 Md. 234, 246; *Alexander* v. *Walter*, 8 Gill, 247, note; *Cecil* v. *Cecil*, 19 Md. 72, 79.

. It is submitted that under the authorities the appellee would have had a perfect right, in case the judgment in the Admiralty suit had been the very reverse and there had been an action brought by the appellant against the appellee, based upon

the result in such suit, to deny that the decision in the first suit was binding upon it, even though notice had been given, as was done in the case at bar. It could have relied upon its remoteness from the original suit. It could only be connected with that suit through a third party, and that not a party to the first suit. It is believed no Court has gone to such a length. Nor would the appellee have had the right to conduct the trial of the Admiralty suit, if had so desired. How could it have justified a demand to be allowed to appear in and defend that suit? The libellant and respondent could have denied the appellee's demand on the ground that it was not a party or privy, but a stranger to the parties to that suit.

(*c*) Nor can the doctrine of "liability over" be invoked by the appellee, in order to place itself in a position where it would be bound by the decision of the Admiralty Court, and thus create a mutuality between the parties to this suit. This doctrine is well illustrated by *Chesapeake and Ohio Canal Company* v. *County Commissioners of Alleghany County*, 57 Md. 201, and the case of the *Washington Gas Co.* v. *District of Columbia*, 161 U. S. 316. Here the canal company in the one case and the gas company in the other were primarily liable to the plaintiffs in the original actions, for it was their negligence in each case which caused the injuries forming the cause of action. "A defendant may call upon anyone, whose liability for the cause of action is *primary* as compared with his own, to assume the burden of the defense in the action." *Herman on Estoppel and Res Judicata*, vol. 1, p. 158.

To invoke the doctrine of estoppel in cases of "liability over," the *same* cause of action is necessary in both suits. Mere identity of certain issues does not cause an estoppel. The mere fact that parties in different suits are interested in proving or disproving certain facts does not make them parties or privies, so as to bound by an estoppel. *Sturbridge* v. *Franklin*, 160 Mass. 149; *Spencer* v. *Williams*, L. R. 2 Pro. and Div. 230.

(*d*) The issues presented in the two cases are totally different. In the Admiralty suit the issue was between an insur-

ance company, subrogated to the rights of the owners of the cargo lost, and a common carrier to enforce a carrier's liability. The burden on the insurance company to enable it to recover was to show that the common carrier had been guilty of negligence in not employing a seaworthy boat in the carriage of the grain.    It did not matter whether the scow was seaworthy at the commencement of the risk; all that was necessary for the plaintiff to show was negligence at any time during the voyage for it to recover.    The Admiralty Court held that the boat was unseaworthy, but did not decide whether it was unseaworthy at the commencement of the risk, or during the continuance of it.    This the Court did not find because the question was not raised, and it was not necessary to decide it.

The present suit is one between an insured and an insurer; all that is necessary to entitle the plaintiff to recover in such an action is, that the boat was seaworthy at the commencement of the risk, and that the risk was covered by the policy of insurance.    Assuming that the appellee had been a party to the Admiralty suit, this point could not have been made by the appellant.    As a matter of fact, no such issue was decided. In *Fowler* v. *Jersey Shore Borough*, 17 Pa. Super. Ct. 366, 372, the Court says:  "Such judgment cannot be extended beyond the points and issues necessarily determined by it, nor is the person who is responsible over, precluded from setting up any defenses which, from the nature of the action or the pleadings, he could not have interposed in the first litigation had he been a formal party to it."

. The appellee was not liable to either party to the Admiralty suit, but was a stranger to them.    The notice from the appellant to the appellee, as to the pendency of the first action, neither of them being a party to it, cannot be said to have brought the appellee into such a relation to that action as to allow it to avail itself of the decision therein as a defense in this suit.    To do so would be extending the doctrine of estoppel beyond the limits laid down by the Courts.    It refused to be bound by that suit.    It cannot now say that it would in any event have been bound by the dec o n in it.

(*e*) It was held by the Court below that the tendency of the present day is to extend the doctrine of estoppel, and for this reason the conclusion was reached in this case that the appellee was entitled to the benefit of the decision of the Admiralty Court.   The case of *Adams & Co.* v. *Board of Liquidation*, 39 La. An. 689, was cited as an authority bearing out this conclusion.   But the decision in that case was based on a statute of Louisiana.

The decisions in our own State do not bear out such a conclusion.   The cases of *Groshons* v. *Thomas*, 20 Md. 234, and *Cheveront* v. *Textor*, 53 Md. 295, certainly sustain the appellant's contention.   The latest case bearing on the question is, *Fetterhoff* v. *Sheridan*, 94 Md. 445.

*John J. Donaldson* (with whom was *Daniel H. Hayne* on the brief), for the appellee.

1.  Is the *unseaworthiness* of the vessel at the time of the commencement of the alleged risk, and continuing to the time of the loss, a defense to an action on the policy?

(*a*) The policy in this case is what is technically known as a "continuing" policy and so equivalent to a fresh insurance taking place at the beginning of each voyage.   *Crowley* v. *Cohen*, 3 B. & Ad. 478; *Columbia Ins. Co.* v. *Catlett*, 12 Wheat. 383.   Such would be the rule were this a policy on the vessel itself, but as this is a "continuing" policy on cargo, it would attach, if at all, at the time of the loading of the cargo on the vessel.   Accordingly, such would be the "commencement of the risk."   *Hill* v. *Patten*, 8 East. 373; *Patapsco Ins. Co.* v. *Biscoe*, 7 G. & J. 293; *Hugg* v. *Ins. Co.*, 7 How. (U. S.) 610; *Ins. Co.* v. *Mordecai*, 22 How. (U. S.) 118.

(*b*) It is the settled law of Maryland that *unseaworthiness* of the vessel at the "commencement of the risk" is a complete defense to an action on a cargo policy.   *Field* v. *Ins. Co. of N. America*, 3 Md. 244, 249; *Augusta Ins. Co.* v. *Abbott*, 12 Md. 348, 376.

2.  Is the finding of *unseaworthiness*, in the Admiralty case mentioned conclusive in this action?

(*a*) The issue in both cases is identical, the *unseaworthiness* of the vessel being the ground, and the *sole* ground, of the decree in Admiralty.

(*b*) The plaintiff (appellant here) being answerable over to respondent, and, *a fortiori*, having been notified by the respondent to appear and defend, is concluded by the decree. *Chicago* v. *Robbins*, 2 Black, 418; *Robbins* v. *Chicago*, 4 Wall. 657; *Wash. Gas. Light Co.* v. *D. C.*, 161 U. S. 316; *McKinzie* v. *B. & O. R. R. Co.*, 28 Md. 161; *Canal Co.* v. *Co. Comm.*, 57 Md. 201; *Parr* v. *State*, 71 Md. 220; *Albert* v. *Hamilton*, 76 Md. 304; *Fetterhoff* v. *Sheridan*, 94 Md. 454.

Not only, however, was the plaintiff (appellant here) notified of the pendency of the Admiralty suit, and to appear and defend the same, but *its* counsel appeared in the case on appeal and took part in the argument.

Further, the plaintiff (appellant here) on receipt of such notice, in turn notified defendant (appellee here) of the pendency of the Admiralty suit and invited it to appear and defend the same.

(*c*) The *findings of facts* on which the decree is based are as conclusive as the decree itself. *Bigelow on Estoppel*, (5 ed.) 99; *Beloit* v. *Michigan*, 7 Wall. 619; *Whitehurst* v. *Rogers*, 38 Md. 503, 518; *State* v. *Brown*, 64 Md. 204; *Trayhern* v. *Colburn*, 66 Md. 277, 278, 279, 282; *Barrick* v. *Horner*, 78 Md. 258; *Shafer* v. *Stonebaker*, 4 G. & J. 345; *The Tubal Cain*, 9 Fed. Rep. 834.

(*d*) The identity of the issues may be shown by the record or other proof. *Garrett* v. *Johnson*, 11 G. & J. 173; *Whitehurst* v. *Rogers*, 38 Md. 503; *Streeter* v. *Dyer*, 39 Md. 424.

(*e*) And the estoppel may be given in evidence without pleading it. *Trayhern* v. *Colburn*, 66 Md. 277.

(*f*) It was suggested, however, by plaintiff, in argument in the Court below, that the finding in the Admiralty suit did not estop the plaintiff, as the defendant would not have been estopped by the same, *i. e.*, that the element of reciprocity, necessary to an estoppel, is lacking.

The appellee (defendant below) contends that this sugges-

tion is entirely untenable.    Both appellant and appellee were substantially interested in the Admiralty suit, knew of its pendency, and had the opportunity of taking part in the same. The appellant was engaged in carrying the cargo (as a common carrier) for another common carrier, the Norddeutscher Lloyd, the respondent in the Admiralty suit.    The libellant in that suit was the assignee of the owner of the cargo carried.

The policy sued on in this present action, being one issued to a common carrier on a cargo in transportation, covers the carrier to the extent only of its liability over to the owner of such cargo, *provided the loss was by reason of one of the perils insured against by the terms of the policy.*   If the loss was by reason of such a peril, there can be no question of the insurer's liability over to the carriers to the extent of such carrier's liability to the owner.

Such being the legal situation of the parties interested in the cargo lost, let us look at the issues in the Admiralty suit. These were (1) the loss of the cargo, (2) the value of the cargo and (3) the cause of the loss, and so absolutely identical with the issues in the case at bar.

Can it be seriously urged that the United States District Court's finding on the first and second of the above issues is not binding on this appellee ?    Or that if its finding on the third issue had been that the loss was caused by some peril insured against, this appellee would not have been bound thereby?    Every element, accordingly, of an estoppel is present; identity of issues, mutuality, a common interest in the subject-matter of the litigation, notice of this, and an opportunity to take part in the same.


BOYD, J., delivered the opinion of the Court.

The appellant sued the appellee on an insurance policy which insured merchandise while on board certain scows, including one known as No. 154 on which the insurance was limited to two thousand dollars.    The declaration alleges that while a cargo of corn was being carried from an elevator to a steamship, within the waters of the harbor of Baltimore, this

scow was, by reason of the perils insured against, overturned and the corn laden thereon was thereby totally lost, and the plaintiff has been required to pay the owner the full value thereof, namely, $2,500. After the defendant had filed its pleas alleging, amongst other things, that the loss occurred by reason of the unseaworthiness of the scow, it made application to the Court under sec. 115 of Art. 75 of the Code to decide before further proceedings two questions, namely,

I. Is the unseaworthines of said scow or lighter at the time of the commencement of the alleged risk and during its continuance a defense to this action?

II. Is the finding of such unseaworthiness in the Admiralty suit mentioned conclusive upon the plaintiff in this action?

In the application it is alleged that the cargo belonged to the firm of I. M. Parr & Son, and that after its loss the President and Directors of the Insurance Company of North America, as assignee of I. M. Parr & Son, filed its libel against the North German Lloyd Steamship Company in the District Court of the United States, in and for the District of Maryland, claiming damages for the loss of said grain, on the ground of respondent's negligence in the carriage of the same ; that JUDGE MORRIS of said Court rendered a decree in favor of libellant, based on his finding of the fact that said scow was unseaworthy at the commencement and during the continuance of its said voyage. It further alleges that the United States Circuit Court of Appeals for the Fourth Circuit affirmed said decree, and the appellee filed as an exhibit a notice from the appellant, informing it of the suit in Admiralty, that the North German Lloyd denied all liability, and notifying the appellee that should it suffer any damage from said suit it would hold it responsible. The notice refers to the policy of insurance and calls upon the appellee to take action with the North German Lloyd to defend the suit, etc. The assistant secretary of the appellee replied that he could not see that his company had anything to do with the matter. The suit in Admiralty resulted in a decree against the respondent (North

German Lloyd Company) in favor of the Insurance Company of North America, for $2,290 with interest and costs. The appellant admitted the facts set out in the application, which, in addition to what we have mentioned, states that the appellant was represented by counsel in the Circuit Court of Appeals.

The Court of Common Pleas entertainad the application, and decided both questions submitted to it in the affirmative ; a verdict was rendered in favor of the defendant and this appeal was taken from the judgment on that verdict. The appellant admits the correctness of the Court's answer to the first question, namely, that unseaworthiness at the commencement of the risk and during the continuance thereof was a defense to this action, but contends that there was error in its decision as to the second question.

I. A number of cases have been before this Court involving the question as to how far a judgment or decree of a Court of competent jurisdiction will operate as an estoppel. In *McKinzie* v. *B. & O. R. R. Co.*, 28 Md. 161, it is thus announced: "A judgment, to operate as an estoppel, must be upon the same subject-matter and between the same parties. The term 'parties,' however, is not restricted to those who appear as plaintiff and defendant upon the record. It concludes those who are directly interested in the subject-matter of the suit, knew of its pendency and had the right to control, and direct, or defend, it." That was an action of replevin. In the previous case of *McKinzie* v. *Russell*, the title to the iron in controversy had been decided to be in McKinzie. Russell was the agent of Mantz and Byrne and only claimed the iron as the property of his principals. Mantz and Byrne knew of the pendency of that suit and Mantz and their attorney took part in the trial. It having been determined in the first case to be the property of McKinzie, this Court had no hesitation in holding them estopped in the suit against the railroad company, which by agreement of all the parties they "were permitted to come in and defend the suit 'as fully and in the same manner as if they were defendants named in the writ.' " In

*C. & O. Canal Co.* v. *County Commissioners,* 57 Md. 201, a recovery by the County Commissioners against the Canal Company was sustained. The Canal Company was under obligation to keep a bridge over the canal in repair and having failed to do so, an injured party sued the Commissioners and recovered against them, the bridge being part of a public highway. The Canal Company had been notified of the pendency of the suit and had taken part in the management of the case. It was held liable for the amount of the judgment recovered against the county, and for counsel fees paid by the latter. *Chicago* v. *Robbins,* 2 Black, 418; *Robbins* v. *Chicago,* 4 Wall. 657, and other well-known cases were relied on. In *Parr & Cockey* v. *State, use of Cockey,* 71 Md. 220, it was held that a decree directing the payment of a certain sum of money by a guardian to a ward was *prima facie* binding on the sureties, although they were not parties to the suit, and it was also decided that when a party interested in a subject-matter of a suit, as those sureties' were, does in fact appear and exercise the right of participating in the defense, as if he were a technical party of record, "he cannot afterwards be heard to contend that he is not bound and concluded by the judgment or decree, to the same extent that he would have been if made a technical party to the proceeding," and "where a party has had a full and fair opportunity presented of making all the defenses at his command to an asserted right or claim it is quite immaterial that he has elected to appear and defend in the name of another who is a party of record, rather than cause himself to be made a co-defendant." Again it was there said "At any rate, having had a legal opportunity to make their defenses, they cannot be heard to say that they did not avail themselves of it." In *Albert* v. *Hamilton,* 76 Md. 304, some of a number of mortgagors had filed a bill to have a mortgage set aside, alleged to have been procured by fraudulent representations, which case was decided against them. It was held that other mortgagors, knowing of the pendency of that suit, who had neglected or wilfully refused to take part in those proceedings, were concluded by the decree therein. It was

on the ground "that persons who are directly interested in the suit and have knowledge of its pendency, and who refuse or neglect to appear and avail themselves of their rights, are concluded by the proceedings as effectually as if they were parties named on the record." In *Fetterhoff* v. *Sheridan*, 94 Md. 445, we applied the doctrine to a claimant of property sought to be condemned in an attachment proceeding, and held that if the claimant having notice of the proceeding, failed to appear and defend, and judgment of condemnation was rendered against the garnishee, the claimant would be bound by the result. Other cases might be cited, but these suffice to point out some of the circumstances under which one not a technical party may be concluded by the result of a proceeding in which he is interested and of which he has notice. It is for the purpose of avoiding useless litigation and to put an end to controversies that can properly be disposed of in one proceeding.

2. But giving this salutary doctrine its full effect, and without being willing to depart one iota from it, is it conclusive of this case? This appellant actually did defend the case in Admiralty, but in doing so what was to its interest to establish? Bear in mind that it was a suit of the assignee of the owner of the cargo against a common carrier and that the appellant's responsibility was due to the fact that it was a common carrier, acting for the respondent. JUDGE MORRIS' opinion, made part of the record, shows that the respondent averred for defense in its answer that the corn was not received on board the "H. H. Meier," its ship which was to carry it, and was lost by the upsetting of the lighter, but the Judge said that since the case of *Bulkley* v. *The Cotton Company*, 24 Howard, 384, it has been conceded, under such circumstances as were presented in the Admiralty case, that "the lighter is the substitute of the ship and that the goods are in fact, therefore, delivered into the custody and care of the ship and her owners from the time that they are placed on the lighter." And he went on to say, "for the purposes of this case I shall take it that the bill of lading which was intended to be the contract for the carriage

was applicable to these goods 'and to the rights of the parties from the time that the corn was put upon the lighter," and he held that "The rule in Admiralty is that when goods are placed aboard a vessel, and the vessel starts on her voyage, and within a short time, without any unusual occurrence of any sort arising, the goods are injured by the leakage of the vessel or its capsizing, the *presumption is that there was some unseaworthiness in the vessel at the inception of the voyage.*" After discussing the testimony he added "'There is, therefore, a failure on the part of the respondent to show that this disaster occurred through any unusual occurrence or anything that could in any sense whatever be called '*a danger of the sea,*'" and hence it followed that the accident must have happened either because the lighter was unfit for the duty undertaken, or was leaking while at the wharf, or had such a defect in her that the slight roll caused by the swell of the waters brought some defective portion of her under the water which leaked in through the defect.

It is manifest then that it was to the interest of the Lighterage Company to prove that the scow was seaworthy and that the disaster occurred through what is called "a danger of the sea." And it is equally clear that it would have been to the advantage of the appellee to show that it was not occasioned by a peril of the sea, as its policy of insurance was against "perils, losses and misfortunes *occasioned by perils of the sea,*" and it has the right to require the appellant to prove that the loss was so occasioned before it can recover. If the appellee had complied with the request of the Lighterage Company and defended the suit, would the latter company have permitted it to offer evidence that the scow was not seaworthy, and thereby not only relieve itself of responsibility but help to fix the liability on the Lighterage Company? Surely it would not. Is then this such a case as calls for an application of the principle relied on to estop the appellant? It does not seem to us to be such. The appellee would not under the circumstances, to use the language of JUDGE ALVEY in *Parr & Cockey v. State, supra,* have "had a full and fair opportunity presented

of making all the defenses as its command to an asserted right or claim." We do not overlook the fact that the appellant invited and requested the appellee to defend the Admiralty suit, and stated that the North German Lloyd Company authorized them to say that they would be pleased to have its co-operation in the defense, but it was requested to *defend*— not to aid the libellant, which it would have done if it had assumed the position which it would have been interested in establishing. It would be useless to contend that the Lighterage Company or the North German Lloyd Company would, or might, have permitted it to adopt its own line of defense, if that was contrary to the interests of those companies, for at most the appellee could only be held liable for two thousand dollars, while the libellant was claiming and actually did recover more than that sum.    It is clear that if the appellee had complied with the request of the appellant, and taken part in the defense of the Admiralty case, it would have been compelled, on this question, to choose between proving that the vessel was *unseaworthy*, and thereby make the respondent liable, or that it was *seaworthy*, and thereby make itself liable. In short, the interests, of the appellant and the appellee radically differed in the line of defense to be adopted, and therefore it was not such a case as required or authorized the appellee to defend.    As the North German Lloyd Company was sued as a common carrier, any defense that would benefit the appellant would likewise benefit it, but that was not so with the appellee.    We are therefore of the opinion that the appellee was not only under no obligation to take part in that case, but could not properly have done so, if it intended, as it had a right to do, to rely on the terms of its policy in determining its responsibility to the appellant.    It was neither a party nor a privy in the sense those terms are used in the authorities, nor did it have an interest in the subject-matter similar to that of the appellant, but on the contrary, as we have seen, its interest was just the opposite in the material issue in that case, namely, whether the scow was seaworthy.    It would have been impossible for it, therefore, to have made such defenses in that case as it has the right to make against the appellant.

We have been referred to no case that goes to the extent we are asked to go in this, under such circumstances as we have stated. The appellant's liability to the owner of the corn was that of a common carrier, governed by principles applicable to that relation as applied in an Admiralty proceeding, while any responsibility on the part of the appellee to the appellant, was by virtue of the contract of insurance, which was to be determined by the terms and conditions of the policy. Any recovery from the appellee by the appellant would not be on the theory of reimbursing the latter for what it would have to pay as the result of the decree in the Admiralty proceeding—there was no remedy over against the appellee by reason of that suit, but if liable at all it was on the contract of insurance. It is evident, therefore, that the appellee was not estopped by that proceeding, or by reason of the notice of its pendency.

3. Having found that the appellee was not estopped, is the appellant precluded from suing in this case? That estoppels must be mutual and reciprocal is a principle frequently announced by this Court. It was said in *Cheveront* v. *Textor*, 53 Md. 308, that "Estoppels are always mutual and reciprocal. *Herman on Estoppel; Alexander* v. *Walter*, 8 Gill, 239. When the parties are not the same in an action at law, the judgment or finding of the jury in another cause, where only one of the litigants (as is the case here) was a party, cannot be admissible as evidence, or by way of estoppel, because the parties not being the same there is no mutuality. It is *res inter alios acta.* Strangers *are not bound by, nor can they take advantage of* an estoppel growing out of proceedings to which they were strangers, and had no opportunity of being heard. *Herman on Estoppel,* 120. Estoppels by judicial determination can only be relied on by parties or privies." In *Groshon* v. *Thomas,* 20 Md. 234, the doctrine was thus announced: "*Estoppels are mutual and cannot be insisted on by any one who is not himself bound thereby.* See 1 *Greenl. Ev.*, secs. 524, 528. Here the appellee was not a party to the record offered in evidence, and not being concluded by it himself, cannot rely

upon it as a technical estoppel upon the appellant." And in *Bolton Mines Co.* v. *Stokes*, 82 Md. 62, it was thus stated: "Estoppels must be reciprocal, and bind both parties. They operate only on privies in blood or estate, and can be used *neither by nor against* strangers. *He that shall not be concluded by the record, or other matter of estoppel, shall not conclude another by it.*"

See also *Cecil* v. *Cecil*, 19 Md. 72, and *Alexander* v. *Walter*, 8 Gill, 239, and note of Mr. Brantly in the annotated edition where many cases are cited.

As there is nothing in the record to suggest an estoppel *in pais*, it is not necessary to discuss that. It is not pretended that the appellee was in any wise misled to its injury by any act of the appellant, done or omitted to be done, which calls for the application of that valuable doctrine.

We are therefore of the opinion that the finding in the Admiralty case that the scow was unseaworthy is not conclusive upon the appellant, and hence the judgment must be reversed.

> *Judgment reversed, and new trial awarded, appellee to pay the costs.*

(Decided June 9th, 1904.)