## THE CHRISTIANA·BAIRD.

### (District Court, E.·D. New York.   April 2, 1909.)

TOWAGE (§ 11*)—INJURY TO TOW—COLLISION BETWEEN TOWS—FAULT OF TUG.

A tug proceeding down the Passaic river with a scow on one side and a schooner in tow on a hawser was compelled to wait the passing of trains before the opening of the draw in a railroad bridge, and while doing so kept to the east side of the river because the ebb tide was setting toward the southwest. The draw, which was on the east side, was opened in time to permit the tug to pass, but in doing so the master miscalculated and went so near the east side that the scow struck the trestle, and the schooner came into collision with it and was injured. *Held*, that the fault was that of the master, which rendered the tug liable for negligent towage.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11, 19; Dec. Dig. § 11.*]

In Admiralty.

Alexander & Ash, for libelant.
Martin A. Ryan, for claimant.

CHATFIELD, District Judge.   On the 14th of January, 1907, the tug Christiana Baird was proceeding down the Passaic river, with a scow, the Brimstone, fastened alongside on the port, and a schooner, the Annie E. Webb (owned by the libelant), on a hawser not more than 125 feet in length.   When a short distance above the drawbridge operated by the New Jersey Central Railroad, the tug signaled the bridge.   According to the custom of the railroad company under those conditions of tide, a signal was in position, indicating to the boat coming down the river that the draw would be opened upon the east side of the pier, in midchannel.   The bridge tender did not respond to the tug's signal, and two trains, one from the east and the other from the west, crossed the bridge while the tug was drifting under the influence of her own headway and the tide.   After these trains had passed over the draw, the tug gave a second signal to the bridge tender, which was not answered, nor was the draw opened, but another train, appearing some mile or more to the west, was allowed to pass over the draw before the eastern wing of the draw was raised. The tugboat, when the draw was started in motion, went ahead at full speed, and as the tow passed through the draw the forward port corner of the scow struck the northwest corner of the trestle, upon the east side of the draw, whereupon the scow swung around, and the schooner Annie E. Webb came ahead and into collision with the scow.   Injuries resulted to the schooner from this collision, and she

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was further damaged by being carried against the abutments of the bridge, while the tug and scow floated through the draw and were not seriously damaged. The ebb tide at this point sets to the southwest through the draw, and through all portions of the trestle, which is built upon rows of piles, assuming that the bridge runs approximately in an east and west direction.

The testimony in the case shows that the tug, at all times prior to going ahead at full speed when the draw was open, had been working to the eastward, maneuvering to maintain a position from which she could go straight through the draw when the eastern half was lifted. The testimony shows, also, that, at the time the tug started ahead at full speed, she was some 150 feet to the north of the bridge, and at the same time somewhat over to the east of the point where the scow struck the bridge.

Assuming, as the testimony shows without dispute, that the set of the tide was toward the bridge and to the west, it would have been a physical impossibility for the tug to hold the tow to the eastward of the draw, without an effort on the part of the captain to counteract the western drift of the tide. The entire testimony shows that the captain of the tug, as well as the bridge tender, realized that the bridge was not to be opened until the last train from the west had passed over the draw. It would appear that, when this train came in sight, the distance between the tug and the bridge was such that it would have been difficult, and perhaps more dangerous, to attempt to turn around than to wait, but throughout the entire period it is apparent that the bridge tender estimated and expected to be able to open the draw in time to allow the tug and its tow to go through. The captain of the tug at all times anticipated that the draw would be opened in time to allow his boat to go through, inasmuch as he did nothing at all to avoid accident, except to maintain his position against the tide.

It is unnecessary to consider who would have been responsible if the draw had not been opened in time to allow the passage of the boats; nor does the effect of the statute making it the duty of the railroad company to operate the draw, and to give timely signals when the draw cannot be opened, alter the responsibility in the present case. The bridge was opened in time. The tug would have experienced no difficulty in going through, and no accident of any kind would have happened, if the captain of the tug had not failed to estimate correctly the space by which he could clear the end of the trestle on the easterly side of the draw. In his efforts to maintain his position against the tide, he miscalculated, and his mistake was such that it must be deemed negligent towage, for which the towboat was responsible.

The claimant has cited two cases which must be referred to. In Clement v. Metropolitan West Side El. Ry., 123 Fed. 271, 59 C. C. A. 289, the court held that the approaching boat was not bound to heave to until the bridge was raised, nor to critically examine the situation, but carefully proceed at slow speed, upon the assumption that the bridge would open. But in that particular case the bridge was not opened, and the tug was exonerated from fault, on the ground

that the master of the tug did all that he could, under the circumstances, to avoid a collision brought about through the failure of the railroad company to perform its duty.

In the case of Pennsylvania R. Co. v. Central Railroad of New Jersey (D. C.) 59 Fed. 190, affirmed 59 Fed. 192, 8 C. C. A. 86, an accident occurred at the same bridge and draw opening as in the case at bar. The draw was held closed for the passage of a freight train from the west, exactly as in the present case, and, after the train had passed, the draw was seen to be opening, when the tug went ahead, but struck the bridge, and the Central Railroad of New Jersey, operating the bridge, was held responsible, and the tug exonerated.

The principle difference shown by the opinion between that case and the present is that, in the case mentioned, the tow, going up the river, was compelled to choose between the sides of the draw, and tried to pass through the westerly channel, but in so doing struck the starboard corner of the tow against the center pier; while in the case at bar the passage was to be made through the easterly side, and the tow struck its port corner against the bridge itself (the corner from which the tide would carry a floating object). In that case the court found, as a fact, that the bridge was not opened in time to let the tug "get her tow properly into shape for going into the passage," and in that case the railroad company put in a defense denying the libelant's statement of the occurrence. On the issue of fact the court found for the libelant. Here the facts are not greatly in dispute.

Because of these differences, it does not seem that the case at bar is on all fours; but, whether it be or no, it must be held in the present case that, upon the facts shown, the accident was due to a mistake on the part of the captain of the tug, for which the tug must be held responsible. If he attempted to make the passage, he was bound to use a proper degree of care in doing what, under the circumstances, he was compelled to do. A failure to estimate the space in which such a tow could go through the drawbridge, under the influence of the tide as it was then running, is something for which the captain of the tug, with his familiarity with the conditions and location, must be held responsible.

The libelant may have a decree.