**MARINE INS. CO., Limited, et al. v. Mc-LANAHAN et al.**

(Circuit Court of Appeals, Fourth Circuit. April 14, 1925.)

No. 2312.

1. **Insurance ⊜⇒468—Liability of underwriters held not limited to amount required to be paid by insured ship in limited liability proceeding.**

Liability of underwriters of steamer which, while towing a barge owned by its owner, collided with and injured another vessel, the C., and at same time sank its own tow, *held* not limited to the amounts which the insured ship was required to pay in limitation of liability proceeding filed by it on being libeled by the C.; the running down clause of the policies containing a sister ship provision, and the amount of the policies and of insured's loss within the policies exceeding the amount fixed in the limited liability proceeding.

2. **Insurance ⊜⇒606(3)—Sister ship provision of policy held to give ship sunk or its underwriters no claim against underwriters of colliding ship.**

Sister ship provision of running down clause in policy on ship, which collided with and sunk barge owned by same party, *held* not to give the underwriters of the barge or its owner, as such, any claim against the underwriters of the ship.

3. **Insurance ⊜⇒606(3)—No right of subrogation in underwriters of ship sunk by ship of common owner.**

The barge sunk having no cause of action against the ship sinking it, because being owned by the same party, the underwriter of the barge, paying loss thereon, has no right of subrogation; it standing only in the place of insured.

4. **Insurance ⊜⇒574(5) — Insurers of barge sunk by ship of common owner held, through participation of counsel, to have been parties to arbitration under sister ship clause in ship's policies.**

Underwriters of barge, which was sunk in collision by steamer belonging to same party, *held* by participation of their counsel to have been parties to arbitration under provision therefor in sister ship clause of policies on the ship, and so bound by arbitrator's award.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Suit by J. Craig McLanahan, ancillary receiver of the West India Sugar Corporation, and the Equitable Trust Company, trustee, against the Marine Insurance Company, Limited, and others. Decree for complainants, and defendants appeal. Affirmed.

See, also, 283 F. 240.

John A. McManus, of New York City (Lord & Whip, of Baltimore, Md., and Duncan & Mount and O. D. Duncan, all of New York City, on the brief), for appellants.

J. Craig McLanahan, of Baltimore, Md. (France, McLanahan & Rouzer, of Baltimore, Md., on the brief), for appellees.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. This is an equity cause, instituted by appellees against the appellants in the United States District Court for the District of Maryland, involving the right to certain moneys now in the hands of the appellee the Equitable Trust Company, as trustee, arising from funds paid by the insurance underwriters upon the steamship Augusta by reason of the sinking of the barge Detroit. A brief summary of the facts in the case is necessary to a correct understanding of the issues:

The West India Sugar Corporation, of which appellee J. Craig McLanahan is ancillary receiver, duly incorporated under the laws of the state of Virginia, was engaged in the business of transporting molasses and other goods and merchandise between Cuba and the United States. It owned the steamship Augusta and the barge Detroit, the latter being without motive power of its own.

On or about the 27th of April, 1919, while the Augusta was towing the Detroit, laden with sugar, up the Mississippi bound for New Orleans, she came into collision with the vessel Capitaine de Beauchamp, seriously injuring the latter, and the Augusta, in the endeavor to extricate herself from the Beauchamp, ran into and struck the barge Detroit, sinking the same immediately, and which, with its cargo, became a total loss.

The Augusta was libeled by the Capitaine de Beauchamp in the United States District Court for the Eastern District of Louisiana, and her owners filed limitation of liability proceedings. The Augusta was held solely at fault for bringing about the collision, and limitation of liability was allowed, the ship's value ascertained, and the amount paid into court. At the time of the collision both the Augusta and the Detroit were insured, and the owners of the barge received from its insurers the sum of $25,932 on account of the loss of the barge. The policies of insurance upon the Augusta and Detroit each contained, in addition to the general collision and "running down clause," the provision in cases of common ownership of vessels known as the "sister ship clause," an extract from which is as follows:

" * * * And it is further agreed that the principles involved in this clause shall apply to the case where both vessels are the property, in part or in whole, of the same owners or charterers, all questions of responsibility and amount of liability as between the two ships being left to the decision of a single arbitrator, if the parties can agree upon a single arbitrator, or failing such agreement, to the decision of arbitrators, one to be appointed by the managing owners or charterers of both vessels, and one to be appointed by the majority (in amount) of underwriters interested in each vessel; the two arbitrators chosen to choose a third arbitrator before entering upon the reference, and the decision of such single, or of any two of such three arbitrators appointed as above to be final and binding."

Disagreements having arisen between the parties in respect to the amount payable under said policies, notice was duly given, pursuant to this clause, to the underwriters of the Augusta, that loss was claimed by the owners of the Detroit under said clause in the policies on account of the barge's loss, in addition to the claims under the general collision and particular average clauses. Thereupon, by consent, Hon. Harrington Putnam was agreed upon to arbitrate the differences between the parties, and to make proper award thereon, his finding to be final and binding. The arbitrator's award was in effect as follows: That the liability of the Augusta's underwriters to the owners thereof under the clause set forth in the arbitration agreement was not limited to the amount which the Augusta's owners surrendered in the proceeding to limit that ship's liability, and that the insurers of the Augusta were not liable for any sum whatever for the Detroit or its cargo, or to the insurers of such cargo, other than as covered by the sister ship clause of the Augusta's policies.

Notwithstanding this award was adverse to the appellants, they at once threatened to institute legal proceedings by attachment or otherwise, as a result of which this suit was instituted to enjoin such action on their part. The appellants thereupon appeared and filed their answers and counterclaims, setting forth their defenses, and insisting that they were entitled to have and receive from complainants the specific sums paid by them as underwriters of the barge Detroit, viz. $25,932, and for which the appellants, underwriters of the Augusta, received credit in settling their liabilities arising from the loss of the Detroit, and that by subrogation the underwriters of the Detroit were entitled to maintain their right of recovery for the amount so paid. The District Court decided the questions thus raised adversely to the appellants, and in effect adopted the arbitrator's award aforesaid, and dismissed the counterclaim. From this action the appeal in this case was taken.

The awards of the arbitrator are most important in this case, as the same were made pursuant to the provisions of the policies in question, by one chosen by consent of parties, and whose findings were final between them. Two reports and awards were made; the first dated June 16, 1923, and the second November 28, 1923. In the first, the arbitrator recited that the same turned upon the construction of the "running down" clause in marine insurance policies in connection with the provisions for vessels of common ownership, sometimes called the "sister ship" clause, and said:

"The cases arising under this clause have been infrequent. Its plain purpose was to treat common ownership as no bar to indemnity, so as to give the insured protection for his separate ships, as if there had been no common control. Although the damage and losses of these two vessels run down in the Mississippi, for purposes of limitation of liability, was a single casualty (The Creadon, 5 Aspinall [N. S.] 585), yet this does not

exclude the 'sister ship' principle. This is an underwriter's undertaking to intervene between vessels of the same owner, and, by means of an arbitration, apply the indemnity principles applicable to separately owned ships. Hence, I reach the conclusion that the underwriter's payments in the limitation proceedings did not exhaust their liability under this 'sister ship' clause, which by its terms is limited to the policy valuation, or more accurately by the extent that this valuation had been covered by the policies."

In the second award, dated November 28, 1923, the arbitrator having found that the Detroit's owners had recovered from the barge's underwriters $25,932, and that the underwriters of the Augusta had paid on account of collision damages in the limited liability proceedings $98,241.43, and in addition were liable for $74,068, which with the $25,932 covered the full amount of the underwriters' liability, proceeded to ascertain whether anything further was due from the Augusta's underwriters on account of the loss of the Detroit's cargo, or to the cargo's underwriters, and concluded that no liability existed in favor of either. The following extract from the opinion and award of Judge Putnam, the arbitrator, will greatly tend to elucidate the entire transaction, and make clear the reasons for his rulings, and the principles controlling in the ascertainment of the rights of the parties to the litigation:

"It remains to determine what, if anything, more is due from such underwriters for loss of the cargo on the Detroit, and also for the loss of that vessel. This cargo was a collision loss. However, to recover here, that loss must be brought within the Augusta's insurance policies. The sister ship provision, viewing it from its inception, was not devised to supply any new ground for cargo recovery. Cargo owned by the shipowner is adequately protected by straight cargo insurance. There is no purpose, therefore, to cover it again under such a running down clause. Without express words, it could not be held that the principles of this clause should be extended to risks of the shipowner's cargo, whether in the hull insured, or carried in another vessel; also the questions to be left to the arbitrator are declared to be those 'between the two ships,' which wording excludes such cargo claim. Regardless of its ownership, and of the exoneration by the Harter Act, this cargo cannot claim against the Detroit, since that barge was entirely blameless for its loss. The insurers who have paid on the Detroit's cargo then stand in place of the common owner, and can gain nothing by subrogation. Globe & Rutgers Ins. Co. v. Hines (C. C. A.) 273 F. 774. Hence such cargo claim does not enter into this settlement.

"These Augusta insurers undertook more than the collision liabilities of that vessel. They agreed to indemnify against losses even by its collisions with the assured's other vessels. Here the Augusta was solely to blame. The Augusta's bad steering, as a single act of negligence, first put her into contact with the Capitaine de Beauchamp; then, by the same influence of helm and adverse current, the Augusta came into her own tow, so that it must be held that this original collision caused the Detroit's loss. Fenwick & Co. v. Merchants Marine Insurance Co., Limited, [1915] L. R. 3 K. B. 290. Hence, the Augusta's underwriters cannot here be held beyond what remains after the underwriters' payments to reimburse the Augusta's owner for the amounts surrendered in proceedings to limit liability, which residue of the policy liability (even as depleted by legal expenses incurred by consent of insurers) appears adequate for the awards now to be made.

"What is the standing of the insurers who have paid this $25,932 for the Detroit's loss? From the abandonment and payment these insurers of the Detroit here seek a proportionate recovery. Their payment put them in the shoes of the insured as to remedies over, but it is the insured, as owner of the vessel abandoned (the sole subject-matter of their policies), not as owner of another ship otherwise insured. Payment upon policies on the Detroit gave no right to put into effect clauses insuring the Augusta, and without such a clause, assuming a liability outside of personal remedies, there is no way to collect collision damages as between vessels of the same owner. Simpson v. Thompson, L. R. 3 A. C. 279. The Detroit's insurers, therefore, have no standing within the Augusta's policies, which are personal to the insured thereunder, whose separate premium bought this protection. Hence payments by the Detroit's insurers discharged in part that loss of the West India Sugar Corporation, without creating or continuing enforceable rights against any other party to this arbitration. Having been compensated to extent of $25,932 for the Detroit's loss, the assured's claim is for the residue, $74,068, not for the Detroit's full value. I am asked to include the Detroit's claim as part of the limited liability proceedings of the Augusta, and therefore as if this $74,068 had been presented and proved in the New Orleans court, and to award here what would have been a pro

rata dividend in the distribution of $67,000, the Augusta's surrender value.

"But claims against the Augusta in such proceedings were wholly distinct from this obligation of the insurers, which is to meet losses respecting sister ships not legally enforceable, because of the common ownership. The claims in the limited liability proceedings were maritime liens on the proceeds of the Augusta. This insurance liability could in no way have gone into concourse with such liens, and had no standing even in theory as to such proceedings. The losses of the Capitaine de Beauchamp and cargo have received appropriate liquidation by a decree of the entire proceeds less expenses, which sum has been taken out of court. This 'sister ship clause,' as here phrased, cannot figure in limited liability proceedings since between vessels of same owner, or operating charterer, no such liability can arise. It is true that this arbitration clause includes 'all questions of responsibility and amount of liability as between the two ships.' This means that the arbitrator must weigh the faults and merits in the navigation of each ship, so as to fix the responsibility and ascertain the extent of liability of its respective insurers. Hence $74,068, being the net loss, after crediting all insurance paid is now found due from the Augusta's insurers, and to be borne according to the sums so insured."

In quoting at length from the opinion and findings of the arbitrator, we have been influenced as well because of the manifest strength and apparent justice of the same, as because of the source from which it came; Judge Putnam having long been one of the outstanding figures of the American admiralty bar. The following conclusions are controlling in this case:

[1] First. That the liability of the underwriters of the Augusta was not limited to the amount required to be paid by that ship in the limited liability proceeding. The effect of that proceeding was to relieve the shipowner from liability, except for what was saved from the wreck, however little that might be; whereas, the insurance taken by the shipowner from the underwriters in this case was to protect him from losses arising from causes and disasters insured against, and as long as the ship's loss exceeds the amount of the policies issued, and the claim comes within the provisions of the policy, and is not affected by any of its excepting clauses, the policies are liable for the full sum insured.

[2] Second. Under the so-called "sister ship" provision of the "running down" clause of the marine insurance policy, properly applicable to vessels of common ownership, neither the underwriters of the Detroit and its cargo, nor the owner thereof as such, can assert any claim against the underwriters of the Augusta. They did not occupy such a relation to the latter ship nor its underwriters as to enable them to do so. The appellants were underwriters of the Detroit, and paid the liability incurred as such, and the appellants sustained a like liability as the underwriters of the Augusta, and upon its payment, it would not seem that either such owner or underwriters, and certainly not the latter, would incur any liability to the Detroit or its cargo or to the underwriters thereof; and that the right to maintain the same finds no support either in the plain terms of the clause in question, nor from any reasonable and fair interpretation that can be placed thereon. The reasoning of the arbitrator on this question hereinbefore recited seems to us entirely conclusive of this subject.

[3] Third. The right of subrogation sought by appellants, underwriters of the Detroit, and who paid on that account $25,932, is equally untenable. In the most favorable view, they stand in the place of the insured, and can have no recovery against third persons, save such as could have been maintained by the latter. Phœnix Ins. Co. v. Erie Transp. Co., 117 U. S. 312, 320, 321, 6 S. Ct. 750, 29 L. Ed. 873; The Catskill (D. C.) 95 F. 700; The Livingston (D. C.) 104 F. 918; Kaltenbach v. Mackenzie, 4 Aspin. 39; Joyce on Insurance, vol. 5, § 3538, p. 5883. If no legal liability exists in favor of the underwriters of the Detroit against the underwriters of the Augusta, upon what theory or reasoning could the former secure any right of subrogation against the latter by anything they might do or attempt to do in the matter of the settlement of the undertaking by which they were bound?

[4] Fourth. Appellants insist that they are not bound by the arbitration awards against them; that they were not parties thereto, and never meant to arbitrate any question of the liability existing between the Detroit's underwriters and its owners. We have given careful consideration to this view of the case, and are forced to the conclusion that the appellants were parties to the arbitration, and were so related thereto as to be bound by the awards therein. They, by their counsel, took part in the proceedings, consented to the inauguration thereof and to the naming of the arbitrator, appeared before him and participated in much that oc-

curred, and generally were so circumstanced as to be fully bound thereby. Washington Gas Light Co. v. District of Columbia, 161 U. S. 316, 329, 16 S. Ct. 564, 40 L. Ed. 712; Swift & Co. v. Jones (C. C. A. 4th Cir.) 145 F. 489, 493, 76 C. C. A. 253; Fudickar v. Guardian Life Insurance Co., 45 How. Prac. 462, 467; Chesapeake Lighterage & Towing Co. v. Western Assurance Co., 99 Md. 433, 442, 443, 58 A. 16; McKinzie v. B. & O. R. R., 28 Md. 161, 174; Kidwell v. B. & O. R. R. Co., 11 Grat. (Va.) 676, 689; Sweet v. Morrison, 116 N. Y. 19, 27, 22 N. E. 276, 15 Am. St. Rep. 376; Hostetter v. Pittsburgh, 107 Pa. 419, 434; Lloyd v. Barr, 11 Pa. 41, 49.

The trial court sustained the arbitrator's findings, and in brief decided that the appellants were parties to the arbitration and bound thereby, and could not avoid the same in this proceeding; that the awards as made were right; that the principle of subrogation did not apply; and that no right of action on behalf of the Detroit arose against the Augusta, by reason of the collision, since the two vessels belonged to the same owner—in all of which we fully concur, as we do, that the decision of the District Court is plainly right, and ought to be affirmed.

Affirmed.