## CONNERS MARINE CO., Inc. v. NEW YORK & LONG BRANCH R. CO.

### The GRAMERCY.

### Civ. No. 9748.

United States District Court
D. New Jersey.

Dec. 2, 1949.

As Amended Feb. 7, 1950.

Daniel F. DeLear, Jersey City, N. J., Purdy & Lamb, New York City, for libellant.

William F. Hanlon, New York City, Reynier J. Wortendyke, Jr., Newark, N. J., for respondent.

MEANEY, District Judge.

### Findings of Fact

This is a suit in admiralty brought by the Conners Marine Company, the owner of the Tug Gramercy, to recover from the New York and Long Branch Railroad Company for damages which have been assessed against the Conners Marine Company in an action brought by the Bouchard Transportation Company in the United States District Court for the Eastern District of New York. In the action in the Eastern District of New York an attempt was made to implead the Railroad Company under Admiralty Rule 56, 28 U.S.C.A., but this was unsuccessful.

The case arises out of a collision on March 24, 1943 in the Raritan River between the barge Tar & Fuel No. 1, which was being towed alongside the Tug Gra-

mercy, and a railroad bridge owned and operated by the respondent. From the evidence the following facts appear:

1. The barge Tar & Fuel No. 1 was taken in tow by the Tug Gramercy on the tug's port side, being towed bow first and secured with three five inch lines.

2. The tug and tow left Piscataway and proceeded down the Raritan River bound for Port Socony. As they approached the New York and Long Branch Bridge between Perth Amboy and South Amboy the tide was ebbing, the weather was clear and the wind was strong from the southwest.

3. At about 2,000 feet from the bridge, when passing Sandy Point at full speed (about five knots) the tug sounded a signal for the bridge to open. No answer was received from the bridge. The speed was then reduced to half speed. Another signal was sounded by the tug when about 1,200 to 1,300 feet from the bridge.

4. The engines on the tug were then stopped and the tug and tow drifted toward the bridge turning sideways in the channel. As they drifted, the wind set them off toward the northern side of the channel.

5. When the tug and tow were about four or five hundred feet from the bridge, it began to open.

6. The tug then started ahead at full speed attempting to go through the draw. The rudder was put hard right, then hard left, but the tug could not straighten out in time and so collided with the port abutment of the bridge and then sheered over and collided with the center pin breaking all the lines between the tug and tow.

7. The barge was 174 feet long and 40 feet wide; the bridge opening was 132 feet long.

8. At the time of the collision the mate, Herbert Wilkins, was on duty navigating the tug. Although well experienced on tug boats, Wilkins had never before navigated on the Raritan River and had only navigated this particular tug for a short time the day before the collision.

9. The personnel on the bridge testified that they first heard the tug's signal when it was about 1,500 feet away and they opened the bridge in about two or three minutes.

### Discussion.

Those in control of the navigation of the tug were under the duty of navigating the tug in a reasonably prudent manner so as to avoid collision and to prevent damage to the tow. The tug had the right to assume that the bridge would be opened in time for passage after the proper signal was given. Clement v. Metropolitan West Side El. Ry. Co., 7 Cir., 1903, 123 F. 271. However, on failing to receive a reply, further progress would most probably result in its proceeding into a position of danger. In The Radnor, 4 Cir., 1926, 14 F.2d 263, 266, the court said, "Immediately upon the tug's failure to receive a reply * * * it was admonished that it was proceeding, with the draw closed, into a position of imminent danger * * * To have waited under these circumstances until within a barge length of the bridge, with the draw closed, without giving danger signals earlier, or at least stopping, reversing, and putting its engines full speed astern, was manifest negligence."

In the instant case the tug's engines were first slowed, then stopped, but due to the wind and the ebb tide she drifted into a crosswise position in the channel. To have attempted passage through the draw from such a position was imprudent navigation and a contributing cause of the collision. The District Court for the Eastern District of New York so held in the suit brought by the barge owner. Furthermore, it would seem logical that where a moving vessel collides with a drawbridge, there is a presumption of negligence on the part of the vessel. Wilmington Ry. Bridge Co. v. Franco-Ottoman Shipping Co., 4 Cir., 1919, 259 F. 166. So much for that aspect of the case.

The duty is imposed under section 4 of the Bridge Act, 33 U.S.C.A. § 494, to open the drawbridge promptly upon reasonable signal. The regulations, 33 C.F.R. § 203.-210, promulgated by the Secretary of War pursuant to section 9 of the Act, 33 U.S.C.A. § 499, provide that:

"When a vessel approaches within signaling distance of a bridge for passage, the master thereof shall signify his intention by three blasts of a whistle or horn. The signal shall be answered by three blasts of a whistle or horn from the bridge unless, under paragraph (b) a delay in opening is permitted, when the answer from the bridge will be two blasts of whistle or horn, and the tug stationed at the draw shall immediately go to the assistance of the vessel."

In this case no answering signal was given from the bridge. In Pennsylvania R. Co. v. Central R. Co. of N. J., D. C.S.D.N.Y. 1892, 59 F. 190, affirmed D.C., 59 F. 192, it was held that the omission either to open the draw when the tug is at a reasonable distance, or to give prompt notice if the draw cannot be opened, constitutes negligence. In addition, where there has been an infraction of a rule intended to prevent collisions, the rule laid down in The Pennsylvania, 86 U.S. 125, 22 L.Ed. 148, imposes upon the party violating the rule the burden of showing that the violation could not have caused the collision. See also: Great Lakes Towing Co. v. Masaba S. S. Co., 6 Cir., 1916, 237 F. 577. The failure to signal and the delay in opening the draw resulted in placing the tug in a dangerous position. Thus, having created a situation in which there was the risk of collision, the negligence of the bridge personnel must be held to have concurred with the imprudent navigation of the tug in causing the collision.

In the suit brought by the barge owner in the Eastern District of New York the court concluded that the failure of the bridge to signal was not the cause of the collision. Respondent asserts that this is conclusive as between the present parties. With this the court is not in agreement. "Only a party to a prior action or his privy may avail himself of the bar of a final judgment therein by pleading res judicata." In re Weisbrod & Hess Corporation, 3 Cir., 1942, 129 F.2d 114, 118. Cf. Restatement of Judgments, § 106 comment d and § 107 comment h. It has also been held that a litigant may not take advantage of a former adjudication where he was not a party to the action or in privity with a party even where the former action grew out of the same accident. Miller v. Public Service Co-ordinated Transport, 3 Cir., 1944, 140 F.2d 668. The language used in Hornstein v. Kramer Bros. Freight Lines, 3 Cir., 1943, 133 F.2d 143, at page 145, although the situation was somewhat different, seems appropriate here. The court said: "The rule of collateral estoppel may be described as a compromise between the interest of the litigant in pressing his claim and the interest of the public in bringing an end to one man's litigation. Under it one may have his day in court, but only one day, *against another*. But the rule does not go so far as to make the finding in one man's case in a personal action a conclusion of ultimate truth. A law suit is not a laboratory experiment for the discovery of physical laws of universal application but a means of settling a dispute *between litigants*. That which is settled as a fact between them through a given piece of litigation under the principles of res judicata, binds only the parties themselves and those who are in such relation to the parties as to be considered in privity with them." (Emphasis supplied.)

In the instant case the respondent was neither a party to the former action nor was it in privity with any of the parties in that action. Its interests were adverse to both of the parties in the previous suit. See Chesapeake Lighterage & Towing Co. v. Western Assur. Co., Ct.App.Md. 1904, 99 Md. 433, 58 A. 16. Moreover, the issue of liability as between the tug and the bridge for contribution as a joint tortfeasor was not litigated in the New York action, nor could it have been since the respondent was not a party thereto or in privity with any of the parties in that suit. See George A. Fuller Co. v. Otis Elevator Co., Sp.Ct. 1918, 245 U.S. 489, 38 S.Ct. 180, 62 L.Ed. 422; Neenan v. Woodside Astoria Transportation Co., Ct.App.N.Y.1933, 261

N.Y. 159, 184 N.E. 744. Respondent then cannot avail itself of the determination of the court in the previous suit.

### Conclusions of Law.

 The court concludes that both parties were at fault and that the libellant is entitled to contribution. See Great Lakes Towing Co. v. Masaba S.S. Co., supra.

An order may be submitted in conformity herewith.