## MANISTEE LUMBER CO. *v.* CITY OF CHICAGO *et al.*

(*District Court, N. D. Illinois.* November 3, 1890.)

1. COLLISION—BETWEEN TOW AND DRAW-BRIDGE—LIABILITY OF TUG.
   Libelant's schooner was proceding up the Chicago river in tow of a tug at a safe speed. The tug in due time whistled for the opening of a bridge, and the bridge tender rang the bell to indicate that it would be opened. On trying to swing the draw, he discovered that the lock was out of order, and, instead of hoisting the customary signal to show that he could not swing the draw, he stopped to investigate the condition of the lock, and did not signal the tug until it was too near the bridge to be able to stop the schooner, the tug having been approaching at the same speed,

as there was yet time to swing the draw, had it been in good order, when the tender signaled his inability to do so. The tug, casting off the schooner, passed under the bridge, while the schooner collided with it, and injured her masts. There was evidence that the city superintendent of bridges had notice of the defective condition of the lock. *Held,* that the tug was not in fault for not slacking its speed as soon as it discovered that the draw was not swinging, and the city is solely liable for the collision.

2. SAME—SIGNALS TO OPEN BRIDGE—ANSWER.

Though the ringing of the bell on the bridges across the Chicago river, just before the draw is swung, is intended as a signal to persons on the street and bridge, it may be treated by an approaching vessel as an answer to her signal to open the bridge, and she is not in fault in proceeding on the strength of it, although the draw may not be swung immediately.

In Admiralty.

*H. W. Wolseley,* for libelant.

*M. W. Robinson* and *Schuyler & Kremer,* for respondents.

BLODGETT, J. The libelant, as the owner of the schooner City of Toledo, brings this suit to recover damages which the schooner sustained by a collision with the Clark-Street bridge, across the Chicago river, on the evening of Sunday, the 21st day of September, 1889, the schooner at the time of such collision being in tow of the tug Satisfaction, owned by the respondent the Vessel Owners Towing Company. The proof shows that the schooner was taken in tow at the entrance to Chicago harbor by the tug Satisfaction, and that the tug, with the schooner in tow, was proceeding up Chicago river at a safe rate of speed, and, soon after passing through the draw of State-Street bridge, whistled for the opening of Clark-Street bridge, the Dearborn-Street bridge being open, and no question is made but what this signal was given in ample time to have enabled the bridge to be opened, if in good repair. The signal of the tug was answered by the ringing of the bell upon the bridge, indicating that the bridge was about to open, and the tug proceeded with her tow, without materially slackening her speed, until near the east end of the protection of the Clark-Street bridge, when the bridge tender, who had made efforts to open the bridge, called out to the tug that he was unable to open it, whereupon the tug cast herself loose from the schooner and passed under the bridge, and the schooner came in collision with the bridge, breaking her foremast, and injuring her mainmast and standing rigging. The proof shows that the lock of the bridge was out of order, so that, when the attempt was made to swing the bridge, they were unable to unlock it, and hence were unable to swing it in response to the signal of the tug. The proof also shows that if, for any reason, the bridge tender is unable to open the bridge, or does not intend to open it, on a signal to do so from an approaching craft, a red ball should be displayed in the day-time, and a red light in the night-time. No such signal was displayed on this occasion until just an instant before the collision, and about the time the bridge tender hailed the tug and said he could not open the bridge, when a red light was hoisted on a pole on the west side of the bridge, and in such position as not to be visible to those in charge of the tug. The proof also shows that, on receiving the signal from the tug to open the bridge, the bridge tender

rung his bell, and attempted to unlock the bridge preparatory to opening it, when he found the lock out of order. He had then ample time to have run up the red light as a signal to the tug to stop, but, instead of doing so, he waited to ascertain the difficulty with the lock, and took so much time to investigate the condition of the lock that the tug with the tow was close upon the bridge before he gave up his efforts to unlock and swing the bridge. Here was the fatal mistake of the bridge tender which brought about the collision. His plain duty was to have hoisted his red light, without an instant's delay, as soon as he found the lock would not work, instead of wasting time in futile attempts to open it, or in trying to find out why the lock would not work. I conclude from the proof that the bridge tender became aware that the lock was out of order when the tug was passing the Dearborn-Street draw, and, if his red light had been promptly displayed at that time, the tug would have had no difficulty in stopping her tow before she reached the Clark-Street bridge, while it is manifest from the proof that there was not time to have stopped the schooner after those in charge of the tug were told by the bridge tender that he could not swing the bridge. In fact, any attempt by the tug to stop the schooner after the hail would only have endangered the tug. The proof also shows that this lock had been for some time out of repair before the collision in question, and that the city's superintendent of bridges had notice that it was in bad order. Under these circumstances, I can see no reason why the tug was not justified in proceeding with her tow up to the time the call was made from the bridge notifying them that the bridge could not be swung. The bridge in question is operated by steam-power, as the proof shows, and swings very rapidly, so that, even if the bridge had been unlocked, and the steam-power applied at the time when the bridge tender called out to the tug that he could not swing the bridge, it could have been swung with sufficient rapidity to have been got out of the way of the schooner, and, in the absence of any signal that the bridge would not be swung, the tugmen are excusable for not stopping. I cannot, therefore, from the proof, affix any blame to those in charge of the tug, and certainly those in charge of the schooner were in no way blameworthy, because the schooner was entirely in the hands of the tugmen. The proof, therefore, satisfies me that the fault for the collision lies wholly with the employes of the city. The fact that the lock was out of order, and was liable to fail to operate at any time, is brought home to the city by proof of the knowledge of the superintendent of the bad condition of the lock; while the failure of the bridge tender to give warning to the tug to stop as soon as he found the lock refused to work is clearly a fault attributable to the city.

It is also urged, on the part of the city, that the ringing of the bell on the bridge, on a signal from a craft to open it, is not a response to the signal from such craft and a notice to the craft that the bridge will be opened, but is a mere warning to persons on the bridge that it is to be swung. Certainly there should and must be some responding signal to that given by the approaching craft for the opening of the bridge, and

the proof shows that the ringing of the bridge bell has always been accepted by tugmen as an assurance that the bridge will be opened.    And, while the ringing of the bridge bell is a signal to persons on the street to keep off, and for persons on the bridge to get off, it is also a signal that the bridge will be opened; so that, as I have already said, the ringing of the bell was properly construed by those in charge of the tug as an 'indication that it would be opened.    A decree will, therefore, be entered dismissing the libel as against the Vessel Owners Towing Company, and finding that the collision occurred solely by the fault and negligence of the city, and that the damages sustained by the schooner be paid by the city.