## CONKLIN v. CITY OF NORWALK.

(Circuit Court of Appeals, Second Circuit.    November 19, 1920.)

No. 50

**Navigable waters** ⊜⫘20(8)—**City liable for failure to open drawbridge.**

A city *held* liable for injury to a schooner through collision with a drawbridge maintained by the city over a navigable stream, governed by regulations prescribed by the Secretary of War, caused by the failure of its bridge tender to open the draw on proper signal by the schooner, or to signal his inability as required by the regulations.

Appeal from the District Court of the United States for the District of Connecticut.

Suit in admiralty by Charles E. Conklin against the City of Norwalk. Decree for respondent, and libelant appeals.    Reversed, and cause remanded.

The respondent municipality maintains a drawbridge over the Norwalk river. It spans what is called (on the chart submitted to us) the "10-foot channel," which to the southerly of the bridge and within about 600 feet thereof is nowhere wider than 200 feet, and in its lower reaches considerably narrower. Libelant's schooner Mary E. Cuff is a vessel of the United States as defined in R. S. § 4311 (Comp. St. § 8057), and on the afternoon of July 27, 1918, approached this bridge, bound in from Long Island Sound, under her own sail. The tide was ebb, and the wind light from the southwest, and the schooner was under shortened sail. The libel alleges that, having given the proper signal, the bridge tender "began to make preparation to open" the draw, but instead of so doing he "deliberately neglected to perform his duty," and kept the draw closed, but gave no "signal of any kind whatsoever that he would not or could not" open the draw; wherefore the schooner ran into the bridge and suffered severe damages.

The District Court dismissed the libel; libelant appealed, and in this court obtained leave to take additional testimony, and he has accordingly examined six witnesses whom the lower court never saw.

William A. Griffin, Jr., of South Norwalk, Conn., and George V. A. McCloskey, of New York City, for appellant.

Edward J. Quinlan, of Norwalk, Conn., and John H. Light, of South Norwalk, Conn., for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above).    Pursuant to section 5 of the River and Harbor Bill of 1894 (28 Stat. p. 362 [Comp. St. § 9973]) the Secretary of War has admittedly regulated the operation of this drawbridge by the following rule:

"Except between the hours of 6:45 a. m. and 7 a. m., and 12 m. and 12:15 p. m., and 12:45 p. m. and 1 p. m., the draw shall be promptly opened for the passage of foreign vessels and of 'vessels of the United States,' as defined by section 4311, Revised Statutes, other than those propelled exclusively by hand, upon a signal to be given by three short blasts of a whistle or horn. In case the draw cannot be immediately operated when a signal is given, a red flag or ball by day, and a red light by night, shall be conspicuously displayed."

The sole questions presented by this appeal are whether those in charge of the city's bridge complied with this rule, and whether the

⊜⫘For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

schooner was guilty of any contributing fault, within the law as laid down in Munroe v. City of Chicago, 194 Fed. 936, 114 C. C. A. 572, where it was held that a vessel, having duly signaled for the draw, may "properly proceed at slow speed on the assumption that the bridge will open, until it appears by proper warning or reasonable view of the situation that it will not." That libelant sounded a horn the requisite number of times is admitted. How often, how near the bridge, and with what kind of a horn the signal was given are in dispute.

The evidence taken in this court is far more important and persuasive than that which the District Judge heard. It would serve no good purpose to discuss it at length; suffice to say that we are satisfied that the horn signal for the bridge was given by the schooner at least three times, beginning at a point more than 3,000 feet from the draw. The bridge tender did not hear these signals until the schooner was approximately 500 feet away, at which time he began preparation for opening the draw. The gates intended to keep traffic off the bridge when the draw was open were out of order, and this caused delay; but no signal to the effect that the bridge would not or could not open in time was given the schooner.

It is urged that the horn used by libelant was insufficient. The word "horn," as used in the rule above quoted, naturally means the kind of horn which approaching vessels are by law required to carry. This matter is regulated by the navigating rules, and while on the testimony we incline to think that this schooner had a mechanical foghorn and used it wherewith to signal this bridge, the point is unimportant, because, although article 15 of the International Rules requires a mechanical foghorn, the corresponding article of the Inland Rules requires only an "efficient foghorn." We are satisfied by the evidence that the Cuff's horn was efficient, because it was heard by so many witnesses who were at a considerable distance.

It is also urged that the Cuff was proceeding at too great speed, and the testimony on this subject is as usual based on estimate. All the conditions were against anything more than steerage way; i. e., the schooner was fully laden, she had small sail set, the wind was light, and she was stemming a strong ebb tide. It appears by satisfying evidence that a tug with a disabled vessel in tow was behind the schooner coming up the channel and had to reduce her speed to about three miles an hour in order not to overhaul her as both craft approached the draw. We think the speed was moderate.

On the whole, we conclude that due warning was given the bridge tender, that he failed to hear until the schooner was between 500 and 600 feet distant, and that if the bridge had been fully in order it could have been opened before the schooner arrived. Whether the temporary displacement of the passenger gates caused much delay is not very clearly shown, but it is plain that it was the duty of the bridge tender to know whether he could or could not open the draw within the time that would elapse between his seeing the schooner and her probable arrival at the draw. If he did not think he could open the draw within that time, he should have hung out a warning signal.

We think respondent was at fault, and perceive no contributing fault

in libelant. We are obliged to reverse this case on the depositions taken in this court. Leave to take this new testimony was obtained on affidavits substantially accusing the original counsel of libelant with failure to produce witnesses who (as now appears from their depositions) could either have been subpœnaed for trial or had their deposition taken de bene esse. We find these witnesses persuasive and their evidence controlling, but respondent should not be mulcted of additional expense incurred by the negligence of the other side.

. The decree appealed from is reversed, and the cause remanded, with directions to assess libelant's damages and to enter a decree for the amount ascertained, without the costs of this court or of the District Court, other than costs incident to such reference as may be necessary to assess damages. Interest on damages, however, will not be denied as to those items whereon interest is lawfully allowed.