## THE RED EAGLE.

### ACKTIESELSKABET BOLGEN v. McWILLIAMS BROS., Inc., et al., and four other cases.

(Circuit Court of Appeals, Second Circuit. November 3, 1924.)

#### No. 43.

1. **Collision 71(3)—Rendering of lines of barges moored to stakeboat, causing flotilla to drift, held proximate cause of collision with other vessels.**

A number of barges were moored to a stakeboat, the first tier of four being tied to the stakeboat, and the others to them. The stakeboat dragged her anchor for a short distance in a gale, when it again held. The lines of three of the barges tied to it rendered, because no hitch was taken around their bitts, and the strain thus placed on the line of the fourth barge caused it to part, and the flotilla drifted and came into collision with anchored vessels. *Held*, that the dragging of the anchor of the stakeboat was not the proximate cause of the collision, but the rendering of the lines of the three barges, due to their negligent tieing, and that they were alone liable.

2. **Collision 68—It is a fault for a barge to be without an anchor.**

It is a fault for a barge to be without an anchor.

3. **Collision 70—Master of stakeboat not under duty to look after fastenings of boats moored to it.**

There is no duty on the master of a stakeboat to look after the fastenings of barges moored to it, but that duty rests on the barges.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Acktieselskabet Bolgen, owner of the bark Bolgen, against the barge Red Eagle and James C. Davis, Director General of Railroads, to recover for damage to the Bolgen. The Director General petitioned in the barges B. F. Guinan, P. B. No. 7, Michael Francis, and Natco No. 17, and the claimant of the Natco No. 17 brought in the National Fireproofing Company under the fifty-sixth rule in admiralty. Also, suit in admiralty by McWilliams Bros., Inc., owner of the barge Red Eagle, against the Director General of Railroads, who petitioned in the barges B. F. Guinan, P. B. No. 7, Michael Francis, and Natco No. 17, and the claimant of the Natco No. 17 petitioned in the National Fireproofing Company. Also suit by Margaret Tague and Edward G. Murray Lighterage & Transportation Company, owners of the boats B. F. Guinan and Mame A. Murray, respectively, and by Sayre & Fisher Company, owner of the barge S. & F. No. 17, against the Director General of Railroads, who in turn petitioned in the same parties and the claimant of the Natco No. 17. Decree for certain of the libelants. Certain of the claimants appeal. Modified.

Leo J. Curren, of New York City, for appellants.

Burlingham, Veeder, Masten & Feary, of New York City (Chauncey I. Clark and Thomas H. Middleton, both of New York City, of counsel), for appellee Director General of Railroads.

Paul Speer and Macklin, Brown & Van Wyck, all of New York City, for appellee Ft. Reading R. Co.

Before ROGERS, HOUGH and MANTON, Circuit Judges.

MANTON, Circuit Judge (after stating the facts as above). The five suits above referred to were tried together and will be here considered in one opinion. On the evening of November 19, 1919, the stakeboat Ox was anchored off Liberty Island

and was the mooring boat for 25 light coal barges. She was held at anchorage by a single anchor, and was employed by the Pennsylvania Railroad Company in hanging up tows of boats bound either to or from the coal port of South Amboy, N. J. This flotilla of coal barges was made up in a number of tiers, the first three of which had four boats each. Each of the first four boats had one line out to the Ox in a customary manner. The B. F. Guinan and the Michael Francis were the outside boats of that tier, the former on the starboard and the latter on the port side, and the two inside boats were the P. B. No. 7 and the Natco No. 17; the former next to the Guinan, and the latter next to the Michael Francis. The Guinan was the first to tie up to the stakeboat, which she did early in the day. The Natco tied up at about 4 p. m., the P. B. No. 7 and the Michael Francis at about 5:30 p. m., and the other boats were added to the flotilla from time to time during the day.

At about 10:30 p. m., the Wyomissing, which at that time was allocated to the Pennsylvania Railroad, hung up a tow of seven or eight additional boats at the stern of the flotilla, and shortly thereafter it was observed that the Ox was dragging anchor. Subsequently the lines of the P. B. No. 7, the Natco No. 17, and the B. F. Guinan rendered off the bitts of the barges, and the line of the Michael Francis held. After dragging some distance, the anchor of the stakeboat took hold on the bottom, and when the stakeboat brought up, shortly before midnight, the strain caused the line of the Michael Francis to part, and, under the influence of an ebb tide and a heavy northwest wind, the flotilla drifted down the bay, until it brought up across the bows of two anchored vessels, one of which was the bark Bolgen. Afterward the flotilla was taken by a number of tugs to Port Johnson, N. J.

Northwest gales had prevailed throughout the day, though, shortly before the occurrence, the wind had abated somewhat. Northwest storm signals were displayed at 8:15 p. m. the day before, November 18th, and were continued until the night of the disaster. There was a strong ebb tide, and during the gale the wind reached a velocity in excess of 44 miles an hour. On November 19th the wind's velocity exceeded 50 miles an hour, but it moderated at about 10 p. m. It appears that the lines of the first four barges were fastened sufficiently to stand this wind velocity. At the time of the drifting there were 24 barges tailing astern of the Ox. It was the constant strain on the Michael Francis and the fetching up of the stakeboat when the anchor held that caused the line of the Michael Francis to part and the tow to go adrift.

[1] The court below held that the cause of the breaking adrift and consequent damage was due to the rendering of the lines of three of the hawser boats and to the Director General as owner of the Ox, and apportioned the damages one-quarter each against them in favor of the libelants, other than the Guinan. As between the Director General, he held the latter could not recover for the failure to examine the hawser leading from her to the stakeboat. As between the Guinan and the two other boats, the rule of one-half damages was applied, and he decreed that the Guinan's half damages should be borne by the Natco No. 17, P. B. No. 7, and the Director General. The theory upon which the liability was imposed upon the Director General seems to be that it was the duty of the captain to look at and be responsible for the fastening of the hawsers on the barges of the first tier. We think that the proximate cause of the drifting was the rendering of the lines. The lines on the bow bitts of the three barges rendered. The captain of the P. B. No. 7 admitted that he had not taken a hitch around the barge's bitts, but merely took some turns, and it appears that this was true of the Natco No. 17 and the B. F. Guinan. This failure made the three barges liable. McWilliams v. Philadelphia & Reading Railroad Co., 203 F. 859, 122 C. C. A. 84.

We have held that a tug which towed a scow and tied her astern of another scow, with directions to the scow captain to run out additional lines to the breakwater on each side of the channel, was not liable for subsequent damage to the scow, caused by the failure of her master to put out lines. The Milton, 235 F. 287, 149 C. C. A. 3. And we have said that "a sound hawser is of no value, if it is carelessly made fast." The Washington Irving, 250 F. 797, 163 C. C. A. 129. While it is true that the barges withstood the wind of the 18th and 19th, from which it is argued that the boats were properly fastened, still there is sufficient in the admission and proofs that there was no hitch around the bitts which made the lines to the Ox fast to place the fault as that of negligent tieing. In McWilliams v. Davis (C. C. A.) 285 F. 312, and Pennsylvania Railroad Co. v. James McWilliams Towing Line (C. C. A.) 277 F. 798, the

tugs were held liable for damage resulting from the drifting of the barges because of failure to inspect the lines from the inboard barges to the piers, which were insufficient to hold the flotilla and parted under the strain of the additional boats. There is no evidence here that the lines were insufficient but they unfastened.

We cannot agree that the Ox should be held in part for the damages resulting from the drifting of the flotilla. It is a fact that the Ox did drag her anchor, but her anchor held after dragging about 400 feet and before any damage occurred. If the lines holding the barges had then held, there would have been no damage. It was because they rendered and placed their entire strain upon the line of one of them that the line parted and caused the drifting. It thus appears that the Ox's fault in dragging her anchor was not a proximate cause of the damages which ensued. The direct cause was the parting of the line of the Michael Francis after the Ox held on her anchor, and after the lines of the other three barges of the first tier had rendered.

[2] It appears that the three barges did not have anchors. If the drifting barges had anchors and dropped them, the subsequent collision may have been avoided. We have held it to be a fault to be without an anchor. The Sunnyside, 251 F. 271, 163 C. C. A. 427; The Westchester, 254 F. 576, 166 C. C. A. 134; The Plymouth, 232 F. 687, 146 C. C. A. 613. In The Sunnyside, supra, we said: "There cannot be two proximate causes of the disaster, and it seems to us quite clear that, if the other boats, which did ride over the Rita, had been supplied with anchors and had used them, they would not have drifted, and that their defaults in these respects were the proximate cause of what happened." See, also, The M. E. Luckenbach (D. C.) 200 F. 630; Id., 214 F. 571, 131 C. C. A. 177.

In The Portia, 64 F. 811, 12 C. C. A. 427, we said: "The fault on the part of the tugs, though gross and inexcusable, was not a proximate cause of the collision. An antecedent act of negligence is remote when, notwithstanding, the other vessel, by the exercise of ordinary care, can avoid a collision; and if, notwithstanding the fault of the tugs, the Portia could have avoided the collision by obeying the rule, which under the circumstances was imperative, she alone must be condemned."

[3] It has not been argued before us whether fault may be attached to the tug Wyomissing tying up her seven boats to the flotilla and thus adding to the strain. There was no duty on the master of the Ox to look after the fastening of the hawsers of these barges. This obligation was imposed on the barges. It is clearly shown that the proximate cause of the flotilla of barges being adrift after the Ox held on its anchor was the rendering of the lines, and this is sufficient to place the liability for the damages upon the barges Guinan, Natco No. 17, and barge P. B. No. 7. It was error to impose any liability upon the Director General for the fault of the Ox. We allow recovery against each of the three barges named to be shared in equal parts.

Decree modified accordingly.