## NEWTOWN CREEK TOWING CO. v. CITY OF NEW YORK.

### No. 178.

Circuit Court of Appeals, Second Circuit.

March 2, 1931.

Alexander, Ash & Jones, of New York City (Edward Ash and Max Taylor, both of New York City, of counsel), for appellant.

---

[1] No opinion filed.

884

Arthur J. W. Hilly, Corp. Counsel, of New York City (William J. Leonard and Matthew J. Troy, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

On August 27, 1927, the tug Wonder, navigated by an experienced captain, took a tow of two barges loaded with coal up Newtown Creek from the East River. To reach the barges' destination, it became necessary to pass the Greenpoint bridge, operated by the city of New York. The tow was in tandem formation on short hawsers 15 feet long. The tide was flood and the weather clear. As the tug proceeded up the creek, she made four or five miles an hour, and, when about 1,000 feet from the bridge, she blew three blasts, a signal to indicate her desire to have the bridge opened for navigation. The signal was heard on the bridge, and the tow came in sight about 700 feet away. About ten minutes elapsed from the signal until the passage through the bridge. But when 800 feet away the tug gave a second three-blast signal, whereupon the tug slowed to two miles an hour. The third signal was given 200 or 250 feet nearer the bridge. When the tug approached within 200 feet of the center pan of the bridge, the engines were stopped. This stoppage, the witnesses say, put the flotilla out of shape, in a Z formation.

The bridge is a continuation of a public street over Newtown creek. It is operated by electric power, and may be opened, in its turning, up or down the creek, which would be toward or away from this flotilla, in the discretion of the bridge tender. The bridge is 206′ 8″ in length. It takes a minute or a minute and a half to open it, but it must first be cleared of traffic. The bridge tender testified that he saw the tow 700 feet away after having heard the signal to open the bridge. He said he opened the bridge toward the oncoming tug, and that, if he had opened it away from the on-coming tug, the swing would have given more time for safe passage. The tug, he said, was 150 feet away when he cleared the bridge of traffic. The tug master "threw his tug Wonder over towards the Kings side and the shape of the tow was that way in Z-shape." The barges scraped along the center pan, and the tug started to go through. The bridge in turning struck one of the barges, causing the damage for which this claim is presented.

The master of the tug testified that, if the bridge had been opened away from the tug, he could have passed through safely, and the bridge tender testified that, if he had opened the bridge the other way, he could have straightened out more readily. It was conceded that the bridge was as readily swung outward as inward, which meant it could be turned outward or away from the approaching vessel, and the bridge operator determines which way it should turn.

On this testimony it is clear that the bridge tender was fully conversant of the condition of the tug and her tow, and he opened the bridge negligently, in the wrong direction, striking the barge and causing the damage. But it is claimed that the master of the tug was at fault in proceeding as he did up the creek before the bridge opened. Notwithstanding this fault, if the bridge tender by the exercise of ordinary care could have avoided the collision by turning the bridge away from the tug, embarrassed as she was, the city would be liable. The Portia, 64 F. 811 (C. C. A. 2); The Richmond, 63 F. 1020 (C. C. A. 2); The Red Eagle, 3 F.(2d) 541 (C. C. A. 2); The El Monte, 252 F. 59 (C. C. A. 5).

In Munroe v. City of Chicago, 194 F. 936 (C. C. A. 7), it was held that a vessel having duly signaled for a draw may properly proceed at slow speed on the assumption that the bridge will open, until it appears by proper warning or reasonable view of the situation that it will not. And this court, in Conklin v. City of Norwalk, 270 F. 68, approved that ruling. In Great Lakes Towing Co. v. Masaba S. S. Co., 237 F. 577 (C. C. A. 6), where a collision occurred with a bridge while lifting, the court pointed out that a failure either to promptly open the draw of, or lift, the bridge maintained across a river, if there was reasonable notice by the approaching vessel, raised a presumption of negligence which the owner or operator of the bridge must overcome. And where the signal has been received of the desire to open the bridge over a navigable stream and no warning is given that the draw will not open in time, it has been held an invitation is presented to a tug to proceed. City of Chicago v. Mullen, 116 F. 292 (C. C. A. 7); Clement v. Metropolitan, etc., Ry. Co., 123 F. 271 (C. C. A. 7); The Charles Mulford, 257 F. 131 (D. C. S. D. N. Y.); O'Keefe v. Staples Coal Co., 201 F. 135 (D. C. Mass.). Under the circumstances here presented, the cause of the collision was due to the fault of the operator in

turning it toward instead of away from the tug. It follows that the decree must be reversed.

Decree reversed.