# THE MAJESTIC.
# THE C–O.

## MESSENGER et al. v. STEVENS.
## No. 3939.

Circuit Court of Appeals, Fourth Circuit. Jan. 6, 1936.

George W. P. Whip, of Baltimore, Md., and Braden Vandeventer, of Norfolk, Va., for appellants.

R. Arthur Jett, of Norfolk, Va. (Kelsey & Jett, of Norfolk, Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The owners of the barge Majestic filed a libel in rem against the motor tug C–O to recover for damages sustained by the barge as a result of a collision between the barge, then in tow of the tug, and the vehicular drawbridge over the Chesapeake and Delaware Canal at Reedy Point, Del. The tug and tow left Philadelphia on the afternoon of December 27, 1933, and anchored that night on Newcastle Flats in the Delaware river. The voyage was resumed the next day about 4 a. m., the flotilla entering the canal about 5:30 a. m. The bridge is owned and operated by the United States. It is located a short distance from the entrance to the canal which was traversed by the vessels on this occasion in about three-quarters of an hour, the tide running with them.

When the vessels were about 2,000 feet from the bridge, the master of the tug, admonished by a sign located nearby on the side of the canal, gave a three-blast signal, indicating that he desired to pass through the draw. At that time a red light was showing on the bridge. There was no response to the signal, the bridge did not open, and the red light remained fixed. About this time, the tug stopped her engines and drifted with the tide at a speed of one and a half to three miles per hour for a distance of 200 feet, when a second three-blast signal was sounded. A signal of one blast was then sounded by the bridge tender, which was the usual notice to pedestrians that the lift span would be raised in not less than one minute. As the master of the tug had taken her through the canal 287 times in three years and a half, he doubtless understood the meaning of this signal. The draw of the bridge rises at the rate of one foot a second, and an elevation of seven feet would have cleared the vessels. On this occasion, however, the bridge was frozen, and the bridge tender was unable to raise it until after the collision had taken place; but he gave no notice of this difficulty until the flotilla was too close to be stopped. Then he sounded a danger signal of two blasts and called out that he could not raise the draw; but it was too late and the barge, being deeply loaded, drifted ahead of the tug into contact with the bridge.

It would have been practicable for the tug when within 1,000 feet of the bridge, to have held the barge in check against the tide until the green light on the bridge appeared; but the master of the tug did not consider that there was any danger because he had received no notice from the bridge to stop and many times before his vessel had gotten close to the draw before it was raised. Even when the danger signal was given by the bridge tender, there would have been time to have raised the bridge for the safe passage of the vessels if it had been in good order.

Rules and regulations concerning navigation of the canal were promulgated' by the Secretary of War on February 7, 1927, pursuant to authority vested in him by section 7 of the Rivers and Harbors Act of August 8, 1917 (33 U.S.C.A. § 1). The pertinent parts of these rules read as follows:

"When at any time during the day or night any vessel or water craft approaches one of these bridges under which it can not pass, the lawful signal of the desire of the master of the vessel or craft to pass through the draw opening shall be three blasts of a whistle or horn blown on the vessel or craft, or notice given in any other convenient manner to the bridge tender of the desire of the master to pass the bridge."

"The draws in each and every bridge, upon the signal or notice above prescribed, shall be promptly opened at any and all hours of the day or night for the passage of such vessel."

"If at the time of receiving the signal or notice above prescribed a car, train of cars, or other vehicle is approaching any draw so closely that it can not be safely stopped before reaching such draw, two blasts of a whistle or horn shall be blown on the bridge. As soon thereafter as such draw shall be cleared it shall be promptly opened, and three blasts of a whistle or horn blown on the bridge to indicate such clearance. At night the navigation lights at the center of the vertical lift draw span will show red when the draw span is closed to navigation and green when it is open."

On March 30, 1933, the district engineer at Wilmington, Del., in charge of the operation of the bridge, published additional rules containing general information concerning the navigation of the canal as follows:

"Rules and Regulations to Govern the Use, Administration and Navigation of the Inland Waterway from Delaware River to Chesapeake Bay, Del. and Md. (Chesapeake and Delaware Canal), were approved by the Secretary of War February 7, 1927.

"Under paragraph 2 of these Rules and Regulations the movement of all craft in the waterway is subject to the supervision of The District Engineer, U. S. Engineer Office, Wilmington, Del., who has general charge of federal waterway improvements in this locality.

"Pursuant to this authority, navigation interests and others concerned have been notified from time to time of conditions obtaining in use and navigation of the canal. At the present time the conditions are summarized as follows:

" '* * * Traffic Signals at all Bridges: Green Light: Vessel may proceed.

" 'Two blasts of Horn, Fixed Red and Blinking Red Lights: Stop and tie up before reaching bridge.

" 'This signal will be given when, for any reason, it becomes necessary to stop a vessel at any of the Canal Bridges.

" 'Four Blasts of Horn: Vessel may proceed after having been stopped.' "

■ Upon this state of facts, the District Judge held that the accident was caused solely by the negligence of the bridge tender without negligence on the part of the master of the tug contributing thereto. In this conclusion we concur. The duty resting upon a tender of a bridge spanning a navigable stream, irrespective of special rules of navigation, was thus described in Clement v. Metropolitan West Side El. R. Co., 123 F. 271, page 273 (C.C.A.7) in the following language which has met with general approval: "A bridge spanning a navigable river is an obstruction to navigation tolerated because of necessity and convenience to commerce upon land. Such a structure must be so maintained and operated that navigation may not be impeded more than is absolutely necessary, the right of navigation being paramount. It is incumbent upon the owner that the bridge be so constructed that it may be readily opened to admit the passage of craft, and maintained in suitable condition thereto. It is also his duty to place in charge those who are competent to operate the bridge, to watch for signals, and to open the bridge for the passage of vessels, and for the performance of such delegated duty he is responsible. It is also his duty to equip the bridge with proper lights giving warning of the position of the bridge and of its opening and closing. If for any reason the bridge cannot be opened, proper signals should be given to that effect, such as will warn the approaching vessel in time to heave to. A vessel, having given proper signal to open the bridge and prudently proceeding under slow speed, has, in the absence of proper warning, the right to assume that the bridge will be timely opened for passage. She is not bound to heave to until the bridge has been swung or raised and locked, and to critically examine the situation before proceeding (City of Chicago v. Mullen, 54 C.C.A. 94, 116 F. 292), but may carefully proceed at slow speed upon the assumption that the bridge will open in response to the signal, and may so proceed until such time as it appears by proper warning, or in reasonable view of the situation, that the bridge will not be opened (Manistee Lumber Co. v. City of Chicago (D.C.) 44 F. 87; Central Railroad Company of New Jersey v. Pennsylvania Railroad Company, 8 C.C.A. 86, 59 F. 192), when it becomes the duty of the vessel, if possible, to stop, and if necessary, to go astern." See, also, Munroe v. City of Chicago (C.C.A.) 194 F. 936; City of Chicago v. Chicago Transp. Co. (C.C.A.) 222 F. 238, L.R.A.1915F, 1062; Conklin v. City of Norwalk (C.C.A.) 270 F. 68; Newtown Creek Towing Co. v. City of New York (C.C.A.) 47 F.(2d) 883; Great Lakes Towing Co. v. Masaba S. S. Co. (C.C.A.) 237 F. 577; O'Keefe v. Staples Coal Co. (D.C.) 201 F. 135; The Louise Rugge (D.C.) 234 F. 768; Id. (C.C.A.) 239 F. 458; The Kard (D.C.) 38 F.(2d) 844.

When the navigation rules above set out are considered, the negligence of the bridge tender in this case is all the more clear, for they specifically require that a signal of two blasts of the horn, fixed red and blinking red lights shall be given when for any reason it becomes necessary to stop a vessel at any of the canal bridges.

■ It is insisted, however, that the master of the tug was negligent in proceeding in face of the red light displayed upon the bridge after he had signaled for the opening. This light, under the rules, was to be displayed at night to indicate that the draw was closed, and it served this purpose as the tug approached the bridge in the darkness of the December morning. But it did not signify that the draw would not open in due time in response to the opening signal. On the contrary, the sounding of one blast by the bridge to warn vehicular traffic indicated to the master of the tug that the bridge tender had been aroused and intended to open the draw promptly. We think that under these circumstances the master was justified in assuming that the draw would be opened in time for safe passage, as had been the case on many similar occasions in the past. As the cited cases show, the master of a vessel, having duly signaled

for the draw, may properly proceed at slow speed on the assumption that the bridge will open, until it appears by proper warning or reasonable view of the situation that it will not. See Clement v. Metropolitan West Side El. R. Co., Munroe v. City of Chicago and Conklin v. City of Norwalk, supra.

Affirmed.